**By:** Stacy Renee Savage                    Plaintiff Pro-Se
    212 Hope Street
    Hazle Township, PA 18201

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

STACY RENEE SAVAGE, and             :

THEODORE SAVAGE, J.D.             :   CIVIL ACTION – LAW

        Plaintiffs        :    CIVIL RIGHTS

        VS.           :

TOM WOLF, Governor of Pennsylvania, and:  No.    3:20cv2354 –

JAKE GRIESEMER, State Parole Agent, and:    MJ Mehalchick

JOHN DOE, I, Director, Scranton    :

District Parole Office, and    :

JOHN DOE, II, Parole Supervisor,   :   JURY TRIAL DEMANDED

Scranton District Parole Office    :

        Defendants       :

### CIVIL RIGHTS COMPLAINT

FILED
SCRANTON
DEC 15 2020

PER _____
                DEPUTY CLERK

## I. JURISDICTION AND VENUE

1. This is a Civil Rights Action authorized by 42 U.S.C. §1983 to redress the deprivation, under color of state law, of rights secured by the Constitution of the United States and by federal statute. This Complaint further raises state law pendent jurisdiction claims of loss of consortium. This Court has jurisdiction under 28 U.S.C. §1331 and §1343 (a)(3). Plaintiffs seek declaratory relief pursuant to 28 U.S.C. §2201 and §2202. Plaintiffs claims for injunctive relief are authorized by 28 U.S.C. §2283 and §2284 and Rule 65 of the Federal Rules of Civil Procedure.

2. The Middle District of Pennsylvania is appropriate venue under 28 U.S.C. §1391 (b)(2) because it is where the events giving rise to these claims occurred, in Luzerne and Lackawanna County, Pennsylvania.

## II. PLAINTIFFS

3. Plaintiff, STACY RENEE SAVAGE, is an adult individual, and lawful spouse of co-plaintiff THEODORE SAVAGE, and she resides at 212 Hope Street, Hazle Township, Luzerne County, Pennsylvania 18201.

4. Plaintiff, THEODORE SAVAGE, is an adult individual, and lawful spouse of co-plaintiff STACY RENEE SAVAGE, and he resides at the SCI-Mahanoy, 301 Morea Road, Frackville, Pennsylvania 17932, listed at Inmate Number: CB-2674.

## III. DEFENDANTS

5. Defendant, TOM WOLF, is an adult individual, and elected as Governor of the Commonwealth of Pennsylvania, the top executive authority in the Commonwealth, with his principle place of business being located at 225 Main Capital Bldg., Harrisburg, Pennsylvania 17120.

6. Defendant, JAKE GRIESEMER, is an adult individual employed by the Commonwealth of Pennsylvania, Board of Probation and Parole, as a State Parole Agent, with his principle place of business located at the Scranton District Parole Office, 430 Penn Avenue, Scranton, Pennsylvania 18503.

7. Defendant, JOHN DOE, I, is an adult individual employed by the Commonwealth of Pennsylvania, Board of Probation and Parole as the Scranton District Director, with his principle place of busniess being located at the Scranton District Parole Office, 430 Penn Avenue, Scranton, Pennsylvania 18503. The name and itentity of this Defendant will be named upon discovery in this action, as Plaintiffs do not know his/her name as of this filing.

- 2 -

8. Defendant, JOHN DOE, II, is an adult individual employed by the Commonwealth of Pennsylvania, Board of Probation and Parole as Supervisor of Defendant JAKE GRIESEMER, with his principle place of business located at the Scranton District Parole Office, 430 Penn Avenue, Scranton, Pennsylvania 18503.

9. At all times relevant hereto each Defendant to this action was acting under color of state law.

10. Each Defendant is being sued in his individual capacity.

III. FACTUAL BACKGROUD

11. Plaintiffs were lawfully married under the laws of the Commonwealth of Pennsylvania on January 21, 2013, as evidenced by the Lackawanna County Marriage Licensing Department.

12. Plaintiffs for many years resided at their home located at 212 Hope Street, Hazle Township, Luzerne County, Pennsylvania 18201, which they have made their marital home.

13. Plaintiff STACY RENEE SAVAGE had an alcohol addiction, and she sought a Protection From Abuse Order from the Court of Common Pleas of Luzerne County against her husband, co-plaintiff THEODORE SAVAGE, to have him removed from their home, doing so only because her husband would not allow her to drink and drive, as she was DUI suspension, and their vehicles were all insured by Safe Auto by Plaintiff THEODORE SAVAGE. At no time has Plaintiff THEODORE SAVAGE been in any manner abusive towards Plaintiff STACY RENEE SAVAGE.

14. On August 3, 2016, the Luzerne County Sheriff's Department served a Protection From Abuse Order (hereafter referred to as "PFA) upon Plaintiff THEODORE SAVAGE, requiring him to vacate their residence located at 212 Hope Street, Hazle Township, PA 18201, and not return thereof.

15. When Plaintiff THEODORE SAVAGE was served the PFA at their residence on August 3, 2016, Plaintiff took with him their family dog.

16. Plaintiff STACY RENEE SAVAGE was not home at the time the PFA was served on August 3, 2016, as she was an in-patient resident of White Deer Run at Blue Mountain Rehabilitation Center for her alcohol addiction.

17. Plaintiff STACY RENEE SAVAGE filed for the PFA as her husband, co-plaintiff THEODORE SAVAGE during a visit of her at White Deer Run at Blue Mountain, told her he would not be allowing her to drive their automobiles, as she was DUI suspension. Plaintiff STACY RENEE SAVAGE took this as her husband being controlling, when it fact it was out of love for her, and to keep her from further DUI arrests, or possibly killing someone by her driving under suspension and drunk.

18. That when Plaintiff STACY RENEE SAVAGE was discharged from White Deer Run at Blue Mountain, after successfully completing her alcohol treatment there, she noticed their family dog missing from their home when she got to their residence after discharge from rehab.

19. Plaintiff STACY RENEE SAVAGE upon returning home from rehab set forth above, began messaging Plaintiff THEODORE SAVAGE, demanding he return their pet dog that he took when the PFA Order was served by the Luzerne County Sheriff's Department.

20. On August 4, 2016 at approximately 10:20 a.m. Plaintiff THEODORE SAVAGE returned to the Plaintiffs marital home, unlocked the front door with his key, walked into the living room letting their dog in the house (returning the dog as requested by Plaintiff STACY RENEE SAVAGE), upon seeing Plaintiff STACY RENEE SAVAGE, Plaintiff THEODORE SAVAGE immediately exited the residence without saying a word, got into their Ford Explorer, and left the scene. See: "Exhibit-A" attached hereto, "AFFIDAVIT OF PROBABLE CAUSE."

21. Once Plaintiff THEODORE SAVAGE proceeded to leave the Plaintiffs residence, Plaintiff STACY RENEE SAVAGE telephoned 911 to report that her husband violated the PFA by returning to their home in violation of the PFA Order.

22. At all times relevant hereto Plaintiff THEODORE SAVAGE was and remains on State Parole under the jurisdiction of the Pennsylvania Board of Probation and Parole.

23. On August 4, 2016 a Criminal Complaint was filed by the Pennsylvania State Police, charging the offense of "Indirect Criminal Contempt," (PFA violation) under 23 Pa. C.S.A. §6114, misdemeanor of the 3 degree, for Plaintiff THEODORE SAVAGE returning to Plaintiffs marital home in violation of the PFA Order.

24. Plaintiff THEODORE SAVAGE being on State Parole, learning of the outstanding PFA violation charge, he contacted Scranton District Office Parole Supervisor Joseph Phillips, and arranged to turn himself in to the Scranton District Parole Office the following day, August 15, 2016, which he did.

25. On August 15, 2016 upon turning himself in to Scranton District Parole Office, he was arrest by the PA State Police and charged with the PFA violation (Indirect criminal contempt), as well as a parole violation for his arrest. See: "Exhibit-B" attached hereto Criminal Complaint, and "Exhibit-C" Notice of Charges and Hearing of the Pa. Board of Probation and Parole.

26. On September 29, 2016, a trial commenced before the Honorable Lesa S. Gelb, Court of Common Pleas of Luzerne County – Criminal Division, for the Indirect Criminal Contempt charge lodges against Plaintiff THEODORE SAVAGE for returning to their marital home in violation of the PFA Order.

27. At the September 29, 2016, PFA Trial, Plaintiff STACY RENEE SAVAGE testified as follows in relevant part:

Q; Now, I want to go back to August 4th. What time was this in the morning?
A: I got home, and I was cleaning up. And he entered my residence at about 10:00 and 10:30. I can't tell you an exact time because I'm unsure of it.
Q: Okay. And you claim he came into the house. He did not say anything to you; correct?
A: Correct.
Q: And he immediately left upon seeing you; correct?
A: He froze like a deer in the headlights. Turned around and ran and jumped in my truck and took off in it.
Q: And you claim he dropped off one of the dogs?
A: Yes. I have two pit bulls; one was missing when I got home.
Q: When you got home from rehab?
A: Yes.

Notes of Testimony, September 29, 2016, Commonwealth vs. Theodore Savage, Criminal Docket No. 8131 of 2016, Court of Common Pleas of Luzerne County.

28. As evidenced by the Trial Testimony of Plaintiff STACY RENEE SAVAGE set forth above, and the "Affidavit of Probable Cause," "Exhibit-A" attached hereto, at no time were their allegations of any type of domestic violence, or physical abuse by Plaintiff THEODORE SAVAGE towards his wife, Plaintiff STACY RENEE SAVAGE.

29. On September 29, 2016, Plaintiff THEODORE SAVAGE was found guilty of violating the PFA Order by returning to their marital home on August 4, 2016. See: "Exhibit-D," attached hereto, September 29, 2016 Indirect Criminal Contempt Verdict Order.

30. Plaintiff THEODORE SAVAGE was sentenced by the Court to (6) months probation for the PFA violation. See: "Exhibit-D," attached hereto.

31. Further, the Court Ordered that Plaintiff THEODORE SAVAGE complete a Batterer's Intervention program. See: "Exhibit-D" attached hereto.

32. Plaintiff THEODORE SAVAGE filed a Motion To Terminate Probation and/or Vacate Judgment with the Court of Common Pleas of Luzerne County

Criminal Division relative to the (6) months imposed by the Court for the PFA violation, and after hearing in open court, on December 2, 2016, the Court GRANTED the motion, and terminated the probation effective December 2, 2016, after serving approximately (3) months of the probationary term. See: "Exhibit-E," attached hereto, Order Terminating Probation.

33. Both Plaintiff THEODORE SAVAGE and STACY RENEE SAVAGE reconciled their marriage, and both filed a joint Motion To Terminate and Dismiss the outstanding PFA Order, and after hearing in open Court, the Court on April 11, 2017 terminated and dismissed the PFA Order on agreement of the parties thereto. See: "Exhibit-F," attached hereto, Order of Court dated April 11, 2017 terminating and dismissing the PFA Order.

34. At the April 11, 2017, Hearing on the parties Motion To Terminate and Dismiss the PFA Order, Plaintiff THEODORE SAVAGE informed the Court that the Pa. Board of Probation and Parole may try to prohibit Plaintiff THEODORE SAVAGE from returning to his marital home with his spouse upon re-parole, at which time the Court indicated: "They can't do that, you's are lawfully married. I'll put it in the Order that you can return to your marital home located at 212 Hope Street, Hazle Township, PA." See: "Exhibit-F," attached hereto, and Notes of Testimony, April 11, 2017.

35. The ORDER óf the Court of Common Pleas of Luzerne County stated: "Defendant may return to 212 Hope Street, Hazle Township, PA 18201." See: "Exhibit-F," attached hereto.

36. After repeated parole hearings, repeated denial of paroles by the Pennsylvania Board of Probation and Parole, following a parole interview held on September 24, 2020 before PBPP, Hearing Examiner CAMPBELL and Board Member JOHNSON, by Board Action recorded on  September 28, 2020,

— 7 —

Plaintiff THEODORE SAVAGE was granted parole release to an approved plan. See: "Exhibit-G," attached hereto, Board Action Dated September 28, 2020.

37. That prior to Plaintiff THEODORE SAVAGE seeing the Pennsylvania State Parole Board, he submitted to the Board a "Parole Re-Entry Success Plan," as required by the Board, with various supporting attachments. which included the following, inter alia:

1) Parole Re-Entry Success Plan listing a Re-Entry Home Plan back to 212 Hope Street, Hazle Township, PA 18201 with his spouse, Plaintiff Stacy Renee Savage,                                          and including a letter from Northeast Counseling Services, 750 E. Broad Street, Hazleton PA 18201, wherein both Plaintiffs would be receiving "marriage counseling."

2) Home-Plan Form, listing 212 Hope Street, Hazle Township, PA 18201 as a Parole Home Plan;

3) My Resolution of Change;

4) Letter dated August 8, 2020 from Northest Counseling;

5) Letter of support of Ida Taylor, Aunt;

6) Correctional Plan - Evaluation (Completion of Batterer's Group);

7) Anger Management Certificate;

8) Relationships Workshop Certificate;

9) Stay On Track Workshop Certificate;

10) Plaintiffs Pastors letter;

11) Certificate of Recognition(World Missionary Press, Inc.);

12) 50 Hours Pathways To Success Certificate;

13) Pathways To Success: Portfolio Products Checklist;

14) Certificate of Completion-PBPP REAL COLORS Program;

15) Certificate of Completion-2017 Day of Responsibility;

16) Certificate of Completion-2018 Day of Responsibility;

17) The Prisoner's Pledge;

18) Certificate of Completion-2019 Day of Responsibility;

- 8 -

19)Flagger Training Course Certification in accordance with PennDOT;

20)Letter from Pa. Dept. of Labor and Industry dated May 10, 2019;

21) Letter from Luzerne County Community College relating to its CDL program;

22)Letter dated 5/26/20 from Pathstone, Scranton, PA; and

23)Affidavit of Probable Cause(PFA Violation).

See: "Exhibit-H," Parole Re-Entry Success Plan with attachments, attached hereto.

38. At the September 24, 2020 Parole Interview with PBPP, Hearing Examiner CAMPBELL and Board Member JOHNSON, Hearing Examiner CAMPBELL asked Plaintiff THEODORE SAVAGE, "I see your listing you home plan back with your wife, what is the status of the PFA?" SAVAGE responded, its been terminated back in 2017, but do I need another home plan? CAMPBELL responded: "Mr. Savage, your saying to much, just answer the questions, your gonna be permitted to return home with your wife." This will either be evidenced by the Hearing Transcript if one exists, or through Hearing Examiner CAMPBELL when called at time of trial of this cause.

39. Plaintiffs are both born again Christians, and were active members of Community Bible Fellowship Church in Hazleton, Pennsylvania from 2012 to 2017, thereafter members of Victory Bible Church, Junedale, Pennsylvania, where they both remain members thereof. Their Pastor being Pastor Corey Adams.

40. Plaintiffs Pastor, Corey J. Adams prior to the September 24, 2020 Parole Interview with Plaintiff THEODORE SAVAGE, communicated in writing with Pennsylvania Board of Probation and Parole, Chairman regarding Plaintiffs being members of the Church, and moreso explaining how Plaintiff STACY RENEE SAVAGE has been sober for many years, a member of the church, and explaining how she needs her husband home.

41. On October 13, 2020, PBPP, SCI-Mahanoy, Institutional Parole Agent PRICE sent out Plaintiff THEODORE SAVAGE' Home-Plan to 212 Hope Street, Hazle Township, PA 18201, with his spouse, to the Scranton District Parole Office for investigation and approval. See: "Exhibit-I," attached hereto.

42. On or about October 15, 2020, Defendant GRIESEMER telephoned Plaintiff STACY RENEE SAVAGE to arrange a day that he can come to their 212 Hope Street, Hazle Township, PA 18201, residence to conduct a home inspection, at which time it was agreed he would do so on Tuesday, October 20, 2020, in the a.m. hours.

43. On October 20, 2020, Defendant GRIESEMER came to the residence, inspected same by checking the rooms, closets, etc. While there he asked Plaintiff STACY RENEE SAVAGE, "Has your husband Theodore ever been physically abusive towards you, or cause you any injries in the past?" Plaintiff STACY RENEE SAVAGE responded, "No, he has always been caring and loving, we are Christians, he just didn't want me to drink and drive, so I get the PFA to get him out of the home so I could drink and drive." Defendant GRIESEMER then said, "Well when its set up like this, its obvious this will be approved, the only thing that may affect the home approval is I see he sued parole staff in Scranton before, that don't look good."

44. By PB-31, Results of Parole Plan Investigation dated October 21, 2020, Plaintiff THEODORE SAVAGE' Home-Plan to his marital home with his spouse, co-plaintiff STACY RENEE SAVAGE was "rejected," without any reason whatsoever given as required by Parole Board Policy and Procedures. See: "Exhibit-J," attached hereto.

45. This very same Home-Plan to 212 Hope Street, Hazle Township, PA 18201 has previously been approved on (3) separate occasions, and nothing at the residence has changed. NOTHING! There are no drugs, alcohol, weapons

guns, or any other contraband on the property. All requirements of Pennsylvania Board of Probation and Parole relevant to Home-Plan Investigations were met, and no legitimate reason can exist to "reject" such Home-Plan, except to do so to retaliate against Plaintiff THEODORE SAVAGE for his litigation against Scranton District Parole Office officials in his suit entitled Theodore Savage vs. Robert G. Jones and Donald Harrell, Civil Action No. 3:14-CV-00604 (M.D. Pa.), which was specifically mentioned by Defendant GRIESEMER on October 20, 2020 during his home inspection to Plaintiff STACY RENEE SAVAGE, such litigation, being federlly protected conduct under the First Amendment of the United States Constitution. Note: This previous litigation was settled on August 14, 2014, where Defendant Parole Officials agreed to allow Plaintiff SAVAGE to return to his marital home if he passed a polygraph as to not being abusive to his spouse, which he passed on July 20, 2015, performed through Pennsylvania Forensic Associates, Reading, Pennsylvania. See:"Exhibit-K," attached hereto, Civil Docket Sheet.

46. Additionally, on August 20, 2020, Plaintiff THEODORE SAVAGE sent a letter of Pennsylvania Board of Probation and Parole (hereafter referred to as "PBPP"), Assistant Counsel, John C. Manning, Esquire, enclosed therewith was an Affidavit of Stacy R. Savage, which evidenced that Plaintiff THEODORE SAVAGE has NEVER been physically abusive to his wife, this particular letter to attorney Manning outlining what was beleived to be a repeated denial of parole by the Board for SAVAGE' previous litigation set forth above.

47. Plaintiff THEODORE SAVAGE avers it was the clear intent of the Pennsylvania Board of Probation and Parole to allow him to return to his marital home with his wife upon re-parole, as such was specifically stated at the September 24, 2020, Parole Interview by Hearing Examiner CAMPBELL, and the Board's approval of my Re-Entry Plan submitted to them.

- 11 -

48. The Pennsylvania Board of Probation and Parole, by completion of its PBPP 361 - Parole Decisional Instrument(11.2018), further evidences that the Board itself found that Plaintiff THEODORE SAVAGE was NOT physically abusive towards his spouse/co-plaintiff STACY RENEE SAVAGE, as at page 7 of the PBPP 361 - Parole Decisional Instrument, the Board did not "check off" V. Special Conditions of Parole, Section "Family/Marital" which would require Plaintiff THEODORE SAVAGE to "comply with supervision under the domestic violence protocol."

49. Defendant GRIESEMER had specific information and knowledge of Plaintiff THEODORE SAVAGE' previous litigation against Scranton District Parole Office staff as Plaintiff SAVAGE' PBPP-257H, Supervision History, at the 8/15/2014 notation clearly states: "The offender signed a settlement agreement between the Commonwealth of Pennsylvania Board of Probation and Parole and himself." Plaintiff contends that reference to his federal litigation should not have been made a part of his Supervision History, as it now was used against him in his recent Home-Plan rejection by Defendant GRIESEMER.

50. Plaintiff STACY RENEE SAVAGE submitted numerous "Victim Impact Statements," "letters," and "Affidavit" to the Pennsylvania Board of Probation and Parole evidencing that Plaintiff THEODORE SAVAGE has never been physically abusive towards her, and requesting that he be paroled and permitted to return home with her at their marital home located at 212 Hope Street, Hazle Township, PA 18201.

51. Defendant GRIESEMER, and Defendants John Doe, I, and John Doe, II all rejected Plaintiffs Home-Plan to Plaintiffs marital home at 212 Hope Street, Hazle Township, PA 18201, doing so solely to retaliate against SAVAGE for his previous litigation against Scranton District Parole Office officials set forth above, and doing so without any justifiable, or legitimate

governmental interest to justify such denial.

52. Plaintiff STACY RENEE SAVAGE on or about August 10, 2019, commenced a Civil Action In Mandamus against Jennifer R. Storm, Victim Advocate, Office of Victim Advocate, and the Pennsylvania Board of Probation and Parole with the Commonwealth Court of Pennsylvania, for the State Parole Board's refusal to allow Plaintiff STACY RENEE SAVAGE to give in person Victim Impact Testimony pursuant to 61 P.S. §6140(e), to request the release and parole of her husband, who was repeatedly being denied parole release. Plaintiff does not have knowledge of the Docket Number given this Civil Action in the Commonwealth Court of Pennsylvania, however, attached hereto is a copy of the "Petition For Writ of Mandamus," filed to commence said action against the PBPP, marked "Exhibit-L" attached hereto.

53. Plaintiff THEODORE SAVAGE sought relief in this regard in writing directed to PBPP, Assistant Counsel John C. Manning, Esquire, Defendant JOHN DOE, I, and Defendant GOVERNOR TOM WOLF dated October 13, 2020, by placing all Defendants on notice as required by 42 Pa. C.S.A. §5522(a), that should no immediate corrective action be taken to approve Plaintiff THEODORE SAVAGE to parole to his marital home located at 212 Hope Street, Hazle Township, PA 18201, that 42 U.S.C. §1983 federal litigation would be commenced seeking damages, declaratory relief, injunctive relief, attorney's fees, and other relief deemed appropriate. To date, no corrective action has been taken to approve the Home-Plan subject to this litigation.

54. As set forth above, both Plaintiff to this litigation are born again Christians, as such, they are required by their faith to follow the Word of God as set forth in the Holy Bible, and the laws of their faith as instructed by God are as follows:

## A) Christian Marital Laws

> "Haven't you read," he replied, "that in the beginning the Creator made them male and female, and for this reason a man will leave his father and mother and be united to his wife, and the two will become one flesh. So they are no longer two, but one. Therefore, what God has joined together, let no man separate." Matthew 19:4-6; Mark 10:6-9; Genesis 2:24; Ephesians 5:31. "Are you married? Do not separate or divorce." 1 Corinthians 7:24. "By law a married woman is bound to her husband as long as he is alive." Romans 7:2. "A wife must not separate from her husband, a husband must not divorce his wife." 1 Corinthians 7:10-11. "Each man shall have his own wife, and each woman her own husband. The husband must fulfill his marital duties to his wife, and lifewise the wife to her husband." 1 Corinthians 7:2-3. "Do not deprive each other except by mutual consent and for a time, so that you may devote yourselves to Prayer. Then come together again so that Satan will not tempt you because of your lack of self-control." 1 Corinthians 7:2-3. "Wives, bubmit to your husbands, as is fitting in the Lord. Husbands, love your wives, just as Christ loved the church, and do not be harsh with them." Colossians 3:18-19 and Ephesians 5:25-33. "Enjoy life with your wife, whom you love all the days of your life." Ecclesiastes 9:9. "Has not the Lord made them one? In flesh and spirit they are His. And why one? Because be was seeking godly offspring. So guard yourself in your spirit, and do not break faith with the wife of your youth. I hate divorce, says the Lord God." Malachi 2:15-16.

55. As Plaintiffs are borna again Christians, they are bound by their deeply rooted sincerely held religious belief and law to remain together as one flesh, and are prohibited from separating or divorcing eachother, but rather required to work through differences with God's help, and remain husband and wife, residing together as a Christian couple.

## B) Honoring Vows and Promises To God

> "When a Christian makes a vow to the Lord or takes an oath to oblige himself by a pledge, he must not break his word, but must do everything he said." Numbers 30:2. Chapter 30 of the Book of Numbers in the Holy Bible makes it clear that God requires his Christians to keep their promises to Him and others. Through these laws God impresses on Christians the serious nature of any vow(such as marital vows) and pledges made. God points out that insincerity, lying and hypocrisy have no place among God's people. "If you make a vow to the Lord your God, do not be slow to pay it, for the Lord your God will certainly demand it of you and you will be guilty of sin...whatever your lips utter you must be sure to do, because you made your vow freely to the Lord your God with your own mouth." Deuteronomy 23:21-23. "I will fulfill my vows to the LOrd in the presence of all His People." Psalm 116:14.

56. Plaintiffs Christian marital/wedding vows to eachother and to their God are: "I_____ take thee_____ to be my wedded husband/wife, to have and to hold, from this day forward, for better, for worse, for richer, for poorer, in sickness and in health, to love and to cherish, till death do us part, according to God's Holy Ordinances and laws, and thereto I pledge thee my faith and my life to you." Plaintiffs as born again Christians are bound by their God and His law to uphold and fulfill these marital/wedding vows made to each other and to their God, "through better or worse."

C) Duty To Follow God's Laws and Commands

"Keep my commands and follow them. I am Lord." Leviticus 23:31. "Keeping God's Commands is what counts." 1 Corinthians 7:19. "If you love me you will obey my commands." John 14:15. "I command you today to love the Lord your God, to walk in His ways, and to keep His commands, decrees and laws; then you will live and increase, and the Lord your God will bless you in the land you are entering to possess." Deuteronomy 30:16. "And if we are careful to obey all this law before the Lord our God, as He has commanded us, that will be our righteousness." Deuteronomy 6:25. "Do not merely listen to the Word of God, and so deceive yourself. Do what it says." James 1:22. "If anyone turns a deaf ear to the law, even his prayers are detestable." Proverbs 28:9. "...He is obligated to obey the whole law." Galatians 5:3. " All who sin apart from the law will also perish apart from the law, and all who sin under the law, will be judged by the law. For it is not those who hear the law who are righteous in God's sight, but it is those who obey the law who will be declared righteous." Romans 2:12-13.

As Plaintiffs are born again Christians, they are required to follow their God's laws and commands that relate to marriage, husbands, wives, separation and divorce, and vows made to their God and to each other. For them to do otherwise is sin and they may parish, and fall into the hands of Satan.

As Plaintiff THEODORE SAVAGE' sentence does not expire/max-out until 2029, it is clear that it would be a substantial burden and government intrusion into Plaintiffs marriage and their Christian religious laws and beliefs for Defendants to be allowed to keep Plaintiffs apart and living separately, contrary to the laws of their God as written in the Holy Bible. See: "Exhibit-M" attached hereto.

- 15 -

## IV. EXHAUSTION OF LEGAL REMEDIES

57. As this is not "prison litigation" as set forth in the Prison Litigation Reform Act, and has nothing to do with "prison conditions litigation," Plaintiffs are not required to exhaust administrative remedies.

58. As Plaintiff STACY RENEE SAVAGE is not a prison litigant, but a citizen in the community at liberty, the Prison Litigation Reform Act does not apply to her or her legal claims raised in this action.

59. As this relates to Defendants of the Pennsylvania Board of Probation and Parole, and not prison officials, there is no available administrative remedies to redress the claims set forth in this action, however, as a professional courtesy, Plaintiffs have sent a written "Petition For Executive/ Administrative Relief and/or Notice Prerequisite To Suit Required by 42 Pa. C.S.A. §5522(a)," to Defendants named-herein, and their Counsel requesting administrative relief, or the result of this instant litigation. Defendants have not taken any corrective action to vindicate Plaintiffs rights set forth in this Complaint.

## V. LEGAL CLAIMS

### COUNT - I
### 42 U.S.C. §1983 - Retaliation/Adverse Action
### First Amendment of the United States Constitution

60. Plaintiffs hereby incorporate all previous paragraphs of this Complaint as though fully set forth herein at length.

61. Plaintiff THEODORE SAVAGE and his litigation against Scranton State Parole staff in Savage vs. Jones, et al., Civil Action No. 00604-CV-2014 (M.D. Pa), and Plaintiff STACY RENEE SAVAGE and her litigation against the Pennsylvania Board of Probation and Parole in the Commonwealth Court of Pennsylvania, were both federally protected conduct under the First Amendment of the United States Constitution.

- 16 -

62. As described above, Plaintiffs THEODORE SAVAGE and STACY RENEE SAVAGE have and continue to suffer adverse actions at the hands of the Defendants to this action.

63. Plaintiffs constitutionally protected conduct was the sole motivating factor in Defendants adverse treatment of Plaintiffs.

64. In taking such adverse actions in rejecting the Home-Plan, Defendants were acting under color of state law.

65. Each of the Defendants above-described adverse actions and conduct towards Plaintiffs was motivated by an evil motive and intent, and involved reckless or callous indifference to the federally protected rights of these Plaintiffs.

66. Defendants, WOLF, GRIESEMER, DOE, I, and DOE, II had no legitimate governmental interest to justify their adverse treatment towards Plaintiffs, and the denial of the Home-Plan to their marital home located at 212 Hope Street, Hazle Township, PA 18201, which was previously approved by the State Parole Board, and nothing has changed since such previous approvals.

67. As described above, Plaintiffs have and continue to suffer damages and injury as a direct result of Defendants adverse action set forth herein.

## COUNT - II
### 42 U.S.C. §1983 - Free Exercise Clause
### First Amendment of the United States Constitution

68. Plaintiffs hereby incorporate all previous paragraphs of this Complaint as though fully set forth herein at length.

69. As described above, Plaintiffs by their deeply and sincerely held religious beliefs are not permitted to separate or divorce, are required to reside together as one, and remain married for the remainder of their natural life, and to keep the marital vows made to each other and their God.

- 17 -

70. The defendants actions described above in not permitting Plaintiff THEODORE SAVAGE to reside with his lawful Christian spouse, co-plaintiff STACY RENEE SAVAGE has and continues to substantially burden the free exercise of their sincerely held religious beliefs, in violation of their First Amendment right to free exercise of religion of the United States Constitution. See: Frazee vs. Employment Security Dept., 489 U.S. 829 (1989); Church of Lukumi vs. Hialeah, 508 U.S. 520 (1993); Hobbie vs. Unemployment Appeals Commission, 480 U.S. 136 (1987); and Sherbert vs. Verner, 374 U.S. 398 (1963).

71. The protection of the Free Exercise Clause not only applies to religious belief, but also extends to acts undertaken in accordance with such sincerely-held beliefs. That conclusion flows from the plain text of the First Amendment, which guarantees the freedom to "exercise" religion, not just freedom to "believe" in religion. See: Smith, 494 U.S. at 877; see also Thomas, 450 U.S. at 716; and Sherbert, 374 U.S. at 403-04.

72. Defendants do not have any substantial governmental interest to justify their rejection of Plaintiffs Home-Plan to reside with his lawful spouse, and their decision to reject same cannot pass the strict scrutiny standard set forth by U.S. Supreme Court precendent relative to placing a substantial burden on the free exercise of the First Amendment.

73. As described above, as a direct result of Defendants rejection of Plaintiffs Home-Plan, Plaintiffs have and continue to suffer injury and damage.

74. Each of the Defendants above-described conduct in rejecting Plaintiffs Home-Plan was motivated by an evil motive and intent, and involved reckless or callous indifference to the federally protected rights of both Plaintiffs to this action.

COUNT - III
Religious Land Use and Institutionalized Persons Act of 2000
42 U.S.C. §2000cc

75. Plaintiffs hereby incorporate all previous paragraphs of this Complaint as though fully set forth herein at length.

76. As described above, Defendants actions in rejecting Plaintiffs Home-Plan "imposes a substantial burden on the religious exercise" of Plaintiffs sincerely held religious beliefs.

77. The rejection of Plaintiffs Home-Plan set forth above was not in furtherance of any compelling governmental interest, but rather to retaliate against Plaintiffs for previous federal litigation against parole officials, which was federally protected conduct.

78. As there was no compelling governmental interest to justify substantially burdening Plaintifss free religious exercise, there would be no least restrictive means of furthering any compelling governmental interest under the Act.

79. As the Commonwealth of Pennsylvania applies for and receives federal funding by way of "Truth In Sentencing Grants," and "Violent Offender" grants from the U.S. Department of Justice, Office of Justice Programs, the provisions of the Religious Land Use and Institutionalized Persons Act apply to the Defendants to this action.

80. In United States Supreme Court in Cutter vs. Wilkinson, 544 U.S. 709 (2005), determined that states that accept federal funds cannot deny persons the necessary accommodations to engage in activities for the practice of their own religious beliefs. Id.

81. Each of the Defendants above-described conduct towards Plaintiffs in rejecting the Home-Plan was motivated by an evil motive and intent, and

involved reckless or callous indifference to the federally protected rights of these Plaintiffs.

## COUNT – IV
### 42 U.S.C. §1983 – Right To Privacy & Due Process
### Fourteenth Amendment of the United States Constitution

75. Plaintiffs hereby incorporate all previous paragraphs as though fully set forth herein at length.

76. As described above, Plaintiffs herein are lawfully married under the laws of the Commonwealth of Pennsylvania, and their church.

77. Defendants above-described conduct in rejecting Plaintiffs Home-Plan, and forcing Plaintiffs to life separately contrary to their deeply rooted and sincerely held religious beliefs, has and continues to violate their Fourteenth Amendment rights to privacy and due process as established by U.S. Supreme Court precedent.

78. Our United States Supreme Court in Zablocki vs. Redtail, 434 U.S. 374 (1978) determined that:

"Although Loving arose in the context of racial discrimination, prior and subsequent decisions of this court confirm that the right to marry is of a fundamental importance for all individuals. Long ago, in Mayard vs. Hill, 125 U.S. 190 (1988), the Court characterized marriage as 'the most important relation in life,' Id., at 205, and as 'the foundation of the family and of society, without which there would be neither civilization nor progress,' Id, at 211. In Meyer vs. Nebraska, 262 U.S. 390 (1923), the Court recognized that the right to marry, establish a home, and bring up children is a central part of the liberty protected by the Due Process Clause, Id., 399, and in Skinner vs. Oklahoma, marriage was described as 'fundamental to the very existence and survival of the race,' 316 U.S. at 541, more recently decisions have established that the right to marry is part of the fundamental 'right to privacy' implicit in the Fourteenth Amendment Due Process Clause.. In Griswold vs. Connecticut, 381 U.S. 479 (1965) the Court observed:

"We deal with a right to privacy older than the Bill of Rights—
older than our political parties, older than our school system.
Marriage is the **coming together for better or for worse,**
hopefully enduring, and intimate to the degree of being sacred.
It is an association that promotes a way of life, not causes;

- 20 -

> a harmony in living, not political faiths; a bilateral loyalty,
> not commercial of social projects. Yet it is an association for as
> noble a purpose as involved in our prior decisions."

Id. at 486, 85 S.Ct. 1678.

79. Several decisions of the United States Supreme Court make clear that freedom of personal choice **in matters of marriage and family life** is one of the liberties protected by the 14th Amendments due process clause, which prohibits unreasonable government intrusion. Loving vs. Virgina, 388 U.S. 1, 12, 87 S.Ct. 1817 (1967); Griswold vs. Connecticut, 381 U.S. 479 (1978); Pierce vs. Society of Sisters, 268 U.S. 510 (1925); and Meyer vs. Nebraska, 262 U.S. 390 (1923).

80. "The freedom to marry **and live together** is one of the vital personal rights protected by the due process clause of the 14th Amendment as essential to the pursuit of happiness by men. Marriage is one of the basic civil rights of man, fundamental to our very existence and survival." Loving vs. Virginia, 388 U.S. 1 (1967).

81. The right to marry under Zablocki vs. Redtail, 434 U.S. 374 (1978) was determined to be of such constitutional importance, that the Supreme Court in Turner vs. Safley, 482 U.S. 78 (1987), determined that such right even applied to prisoners, over the objection of prison authorities on grounds of alleged legitimate security and rehabilitation concerns, stating that:

> "First, inmate marriages, like others, are expressions of
> emotional support and public commitment. These elements are an
> important and significant aspect of the marital relationship. In
> addition, many religions recognize marriage as having spiritual
> significance; for some inmates and their spouses, therefore, the
> commitment of marriage may be an exercise of religious faith as
> well as an expression of personal dedication. Third, most inmates
> eventually will be released by parole or commutation, and
> therefore most inmates marriages are formed in the expectation
> that they ultimately will be fully consummated. Finally, marital
> status often if a pre-condition to the receipt of government
> benefits (e.g., Social Security benefits), property rights (e.g.,
> tenancy by the entirety, inheritance rights), and other, less

tangible benefits (e.g., legitimation of children born out of wedlock). These incidents of marriage, like the religious and personal aspects of the marriage commitment, are unaffected by the fact of confinement or the pursuit of legitimate correctional goals."

Id. Turner vs. Safley, 482 U.S. at 95-96.

82. As described above, the actions of Defendants in rejecting Plaintiffs Home-Plan has and continues to cause Plaintiffs injury and damages, requiring them to live separately, to their detriment and loss.

83. As described above, Defendants has no substantial or compelling reasons or interests to justify the rejection of the Home-Plan, but rather have done so in retaliation for Plaintiffs litigation against parole officials as set forth above, which was federally protected conduct.

84. The Defendants actions, as described above have and continue to violate Plaintiffs rights to privacy and due process guaranteed by the 14th Amendment of the United States Constitution, which is an unreasonable government intrusion of Plaintiffs fundamental rights.

85. Each of the Defendants above described conduct in rejecting Plaintiffs Home-Plan was motivated by an evil motive and intent, and involved reckless or callous indifference to the federally protected rights of both Plaintiffs to this action.

## COUNT - V
### State Law Claim - Loss of Consortium

86. Plaintiffs hereby incorporate all previous paragraphs as though fully set forth herein at length.

87. Plaintiffs are legally married, as such they are entitled to consortium and conjugal fellowship as husband and wife, as defined by Pennsylvania law.

88. The Pennsylvania Supreme Court in Tucker vs. Philadelphia Daily News, 577 Pa. 598 (Pa. 2002), defined the rights of married persons and their right to consortium as follows:

"A loss of consortium claim includes a claim for loss of sexual relations. Consortium is defined as 'the legal right' of one spouse to the company, affection, and assistance of, and to sexual relations with the other." Machado vs. Kunkel, 2002 Pa. Super. 232, 804 A.2d 1238, 1244 (Pa. Super. 2002)(quoting Webster's Collegiate Dictionary, 10th Ed (1998)). More generally, consortium means:

"Conjugal fellowship of husband and wife and the right of each to the company, society, co-operation, affection, and aid of the other in every conjugal relation."

Tucker, supra.

89. A claim for loss of consortium arises from the marital relationship and is based on the loss of a spouses services resulting from injury. Loss of consortium is defined as the loss of the benefits that one spouse is entitled to receive from the other, including companionship, cooperation, aid, affection, and sexual relations. Tucker vs. Philadelphia Daily News, 577 Pa. 598, 848 A.2d 113 (Pa. 2002); citing: Cleveland vs. Johns-Mnvill Corp., 690 A.2d 1146, 1149 (Pa. 1997); and BLACK'S LAW DICTIONARY 306 (6th ed. 1990).

90. As described above, Defendants actions in rejecting Plaintiffs Home Plan, and prohibiting Plaintiffs from residing together in their marital home has and continues to cause a loss of consortium, i.e., loss of spouses services to one another, sexual relations, company, society, cooperation, affection, and aid of the other in every conjugal relations.

91. This loss of services of each spouse has and continues to cause Plaintiffs injury and damages.

92. Each of the Defendants above described conduct in rejecting Plaintiffs Home Plan to his marital home with his spouse/co-plaintiff STACY RENEE SAVAGE was motivated by an evil motive and intent, and involved reckless or callous indifference to the Plaintifs right to consortium and conjugal fellowship.

## Incorporation of Exhibits

93. Plaintiffs hereby incorporate all attached exhibits as though fully set forth herein, and are being made a part of this Complaint.

## Reservation To Amend Complaint

94. Plaintiffs hereby reserve the right to file an Amended Complaint properly naming John Doe, I and John Doe, II upon discovery in this case as authorized by Rule 15 of the Federal Rules of Civil Procedure.

95. Plaintiffs further reserve the right to "add additional defendants" to this action by way of filing and Amended Complaint to name additional Parole Board members and hearing examiners, should it become evident that they are the cause of the injuries set forth in Plaintiffs complaint, and/or are liable for damages as Defendants relied upon a condition imposed by the Board in violation of Plaintiffs constitutional rights.

96. These reservations for leave to amend their Civil Rights Complaint are authorized by United States Supreme Court precedent and Rule 15, of the Federal Rules of Civil Procedure.

97. Plaintiffs furthermore reserve the right to file a "Supplemental Complaint" as authorized by Rule 15(d), raising additional legal claims, and naming new/additional State Parole Board Defendants should any "adverse action/retaliation" be had against Plaintiffs by the Commonwealth of Pennsylvania, Board of Probation and Parole, its employees, agents, successors of interest, and/or any state actor and/or subordinate thereof.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, STACY RENEE SAVAGE and THEODORE SAVAGE requests this Honorable Court enter judgment in their favor, and against each Defendant jountly or severely as follows:

(A) Grant a declaratory judgment that the acts and practices described herein violated both Plaintiffs rights under the Constitution and laws of the United States.

(B) Issue a Preliminary and Permanent injunction ordering that Defendants permit Plaintiff THEODORE SAVAGE to parole to, and reside at 212 Hope Street, Hazle Township, PA 18201, with his lawful spouse, co-plaintiff STACY RENEE SAVAGE.

(C) Award compensatory damages to Plaintiffs from the defendant in excess of Twenty Five Thousand Dollars, and/or for Five Thousand Dollars per day, for each day Plaintiff THEODORE SAVAGE is not permitted to reside with his spouse from the date of its rejection on October 21, 2020, to the date judgment is entered in this action.

(D) Award punitive damages to Plaintiffs from the defendants in excess of Fifty Thousand Dollars.

(E) Award Plaintiffs attorney's fees, and costs of suit.

(F) Grant any other further relief this Court deems proper and just.

Respectfully submitted,

Stacy Renee Savage
Stacy Renee Savage
Plaintiff Pro-Se


Theodore Savage
Theodore Savage
Plaintiff Pro-Se


- 25 -

# D E C L A R A T I O N

We, the undersigned, do hereby declare under penalty of perjury that the facts in the foregoing CIVIL RIGHTS COMPLAINT are true and correct to the best of our personal knowledge, information and belief.

DATE: *October 23, 2020*    *Stacy Renee Savage*
            Stacy Renee Savage
            Plaintiff Pro-Se

DATE: *10-26-2020*     *Theodore Savage*
            Theodore Savage
            Plaintiff Pro-Se

" EXHBIT - A "



# POLICE CRIMINAL COMPLAINT

| Docket Number: | Date Filed:<br>/ / | OTN/LiveScan Number: | | Complaint/Incident Number<br>PA 2016-497682 |
|---|---|---|---|---|
| Defendant Name: | First:<br>Theodore | | Middle:<br>BERNARD | Last:<br>SAVAGE JR |

## AFFIDAVIT of PROBABLE CAUSE

Your affiant is a member of the Pennsylvania State Police assigned to Troop N, Hazleton Station, Patrol Unit.

On 08/04/16 at approximately 1145 hours, I responded to 212 Hope Street, Hazle Township, for a report of a Protection From Abuse Order violation.

Upon arrival, I made contact with victim, Stacy Renee SAVAGE. She related on this date, 08/04/16 at approximately 1020 hours, she was sitting in her living room at her residence located at 212 Hope Street, Hazle Township. At this time, her husband, Theodore Bernard SAVAGE (DOB 02/16/68), the defendant, entered the front door of their residence. She related savage came inside the living room where she was sitting. He dropped one of their dogs off and then stormed out of the house in her blue Ford Explorer. The victim provided copies of the PFA which was issued by Luzerne Count y Sheriff Office.

I subsequently checked the NCIC database for an active PFA order. The search revealed PFA order number 8131-2016 was issued in Luzerne County Court of Common Pleas on 08/03/16. On 08/03/16 at 1146 hours, the PFA was hand delivered to the defendant, Theodore Bernard SAVAGE, by Luzerne County Sheriff Deputy FEDDOCK. The notice states, the protected person, Stacy Renee SAVAGE, is granted exclusive possession of the residence or household. The defendant is required to stay away from this residence, property, school, or place of employment.

The defendant was not processed.

I, TPR. JUSTIN SANNIE, BEING DULY SWORN ACCORDING TO THE LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE FOREGOING AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

_Tpr. Just M. ___ #12153_
(Signature of Affiant)

Sworn to me and subscribed before me this ___4___ day of ___Aug___ ___2016___

_8/4/16_ Date _____, Magisterial District Judge

My commission expires first Monday of January,

COMMONWEALTH OF PENNSYLVANIA
DISTRICT COURT 11-3-04
JAMES DIXON, DIST. JUDGE 11-3-04
HAZLE TWP., LUZERNE COUNTY
MY COMMISSION EXPIRES DEC. 31, 2017

AOPC 411C - Rev. 07/10

Page 1 of 1

" EXHIBIT - B"

**POLICE CRIMINAL COMPLAINT**
COMMONWEALTH OF PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF: LUZERNE

VS.

| | |
|---|---|
| Magisterial District Number: | 11-3-04 |
| MDJ Name: Hon. | JAMES DIXON |
| Address: | 789 AIRPORT ROAD HAZLE TOWNSHIP PA 18202 |
| Telephone: | 570-455-9191 |

**DEFENDANT:** (NAME and ADDRESS):

| First Name | Middle Name | Last Name | Gen. |
|---|---|---|---|
| THEODORE | BERNARD | SAVAGE JR | |

212 HOPE STREET
HAZLE TOWNSHIP, PA 18202

## NCIC EXTRADITION CODE TYPE

- [ ] 1-Felony Full
- [ ] 2-Felony Ltd.
- [ ] 3-Felony Surrounding States
- [ ] 4-Felony No Ext.
- [ ] 5-Felony Pend.
- [ ] 6-Felony Pend. Extradition Determ.
- [ ] A-Misdemeanor Full
- [ ] B-Misdemeanor Limited
- [x] C-Misdemeanor Surrounding States
- [ ] D-Misdemeanor No Extradition
- [ ] E-Misdemeanor Pending
- [ ] F-Misdemeanor Pending Extradition Determ.

Distance:

## DEFENDANT IDENTIFICATION INFORMATION

| Docket Number | Date Filed | OTN/LiveScan Number | Complaint/Incident Number | SID: | Request Lab Services? |
|---|---|---|---|---|---|
| MD-061-2016 | 8/4/16 | T824861-2 | PA 2016-497682 | 15727161 | [ ]YES [x]NO |

| GENDER | DOB 02/16/68 | POB | | Add'l DOB | | Co-Defendant(s) [ ] |
|---|---|---|---|---|---|---|
| [ ] Male [ ] Female | First Name: AKA | | Middle Name: | Last Name: | Gen. | |

| RACE | [x] White | [ ] Asian | [ ] Black | [ ] Native American | | [ ] Unknown |
|---|---|---|---|---|---|---|
| ETHNICITY | [ ] Hispanic | | [x] Non-Hispanic | | [ ] Unknown | |

| HAIR COLOR | [ ] GRY (Gray) [ ] BLK (Black) [ ] BLN (Blonde / Strawberry) | [ ] RED (Red / Aubn.) [ ] ONG (Orange) | [ ] SDY (Sandy) [ ] WHI (White) | [ ] BLU (Blue) [ ] XXX (Unk. / Bald) | [ ] PLE (Purple) [ ] GRN (Green) | [x] BRO (Brown) [ ] PNK (Pink) |
|---|---|---|---|---|---|---|

| EYE COLOR | [ ] BLK (Black) [ ] HAZ (Hazel) | [ ] BLU (Blue) [ ] MAR (Maroon) | [x] BRO (Brown) [ ] PNK (Pink) | [ ] GRN (Green) [ ] MUL (Multicolored) | [ ] GRY (Gray) [ ] XXX (Unknown) |
|---|---|---|---|---|---|

| Driver License | State PA | License Number 23522292 | Expires: 02/27/17 | WEIGHT (lbs.) |
|---|---|---|---|---|
| DNA | [ ] YES [ ] NO | DNA Location | | |
| FBI Number | 47712MA9 | MNU Number | | Ft. HEIGHT In. |
| Defendant Fingerprinted | [ ] YES [ ] NO | | | |
| Fingerprint Classification: | | | | |

## DEFENDANT VEHICLE INFORMATION

| Plate # | State | Hazmat [ ] | Registration Sticker (MM/YY) | Comm'l Veh. Ind. [ ] | School Veh. [ ] | Oth. NCIC Veh. Code | Reg. same as Def. [ ] |
|---|---|---|---|---|---|---|---|
| VIN | | | Year | Make | Model | Style | Color |

Office of the Attorney for the Commonwealth [ ]Approved [ ]Disapproved because: _____
(The attorney for the Commonwealth may require that the complaint, arrest warrant affidavit, or both be approved by the attorney for the Commonwealth prior to filing. Pa.R.Crim.P.507.)

_____
(Name of Attorney for Commonwealth - Please Print or Type)

_____
(Signature of Attorney for Commonwealth)

_____
(Date)

I, TPR. JUSTIN SANNIE
(Name of Affiant - Please Print or Type)

00694358/12153
(PSP/MPOETC - Assigned Affiant ID Number & Badge #)

PAPSP3700
(Police Agency ORI Number)

of the Pennsylvania State Police, Troop N, Hazleton
(Identify Department or Agency Represented and Political Subdivision)

do hereby state: (check appropriate box)

1. [x] I accuse the above named defendant who lives at the address set forth above

   [ ] I accuse the defendant whose name is unknown to me but who is described as _

   [ ] I accuse the defendant whose name and popular designation or nickname is unknown to me and whom I have therefore designated as John Doe or Jane Doe.

with violating the penal laws of the Commonwealth of Pennsylvania at: 214    212 HOPE STREET, HAZLE TOWNSHIP
(Subdivision Code)    (Place-Political Subdivision)

in LUZERNE County    40    on or about    08/04/16 AT APPROX. 1020 HOURS
(County Code)    (Offense Date)

AOPC 412A-Rev. 12/14

Page 1 of 3

 **POLICE CRIMINAL COMPLAINT**

| Docket Number: | Date Filed: / / | OTN/LiveScan Number | | | Complaint/Incident Number PA 2016-497682 |
|---|---|---|---|---|---|
| Defendant Name | First: THEODORE | | Middle: BERNARD | | Last: SAVAGE JR |

The acts committed by the accused are described below with each Act of Assembly or statute allegedly violated, if appropriate. When there is more than one offense, each offense should be numbered chronologically.
(Set forth a *brief* summary of the facts sufficient to advise the defendant of the nature of the offense(s) charged. A citation to the statute(s) allegedly violated, without more, is not sufficient. In a summary case, you must cite the specific section(s) and subsection(s) of the statute(s) or ordinance(s) allegedly violated. The age of the victim at the time of the offense may be included if known. In addition, social security numbers and financial information (e.g. PINs) should not be listed. If the identity of an account must be established, list only the last four digits. 204 PA.Code §§ 213.1 - 213.7.)

| Inchoate Offense | ☐ | Attempt 18 901 A | ☐ | Solicitation 18 902 A | ☐ | Conspiracy 18 903 |
|---|---|---|---|---|---|---|

| ☒ Lead? | 1 | 6114 | (a) | of the | Title 23 , Domestic Relations | 1 | M | | 260/90Z |
|---|---|---|---|---|---|---|---|---|---|
| | Offense # | Section | Subsection | | PA Statute (Title) | Counts | Grade | NCIC Offense Code | UCR/NIBRS Code |

| PennDOT Data (if applicable) | Accident Number | | ☐ Interstate | ☐ Safety Zone | ☐ Work Zone |
|---|---|---|---|---|---|

Statute Description (include the name of statute or ordinance):
**PFA - Contempt for violation of order**

Acts of the accused associated with this Offense:
(1) That a valid (order, protection order, consent decree)was entered into the record of the _Luzerne County_ court on _08/03/16 ; (2) That the contemnor was served with the (order, protection order, consent decree) on _08/03/16 at 1146 Hours____ (date); (3) That the contemnor willfully and contemptuously failed to comply with the (order, protection order, consent decree) by failing to _stay away from the protected person's (Stacy Renee SAVAGE) residence at 212 Hope Street, Hazle Township_ or by engaging in certain prohibited behavior to wit: on _08/04/16 at approx. 1020 hours, the defendant entered the protected persons residence. ; (4) That the contemnor was cited for contempt on _08/04/16 ; (5) That the contemnor had the power or ability to perform the order or refrain from the behavior at the time the order was given and continues to the power or ability; (6) That because of the willful and contemptuous act or failure, the contemnor should be adjudged guilty of indirect criminal contempt.

AOPC 412A – Rev. 12/14

 **POLICE CRIMINAL COMPLAINT**

| Docket Number: | Date Filed: / / | OTN/LiveScan Number | | Complaint/Incident Number PA 2016-497682 |
|---|---|---|---|---|
| Defendant Name | First: THEODORE | Middle: BERNARD | | Last: SAVAGE JR |

2.  I ask that a warrant of arrest or a summons be issued and that the defendant be required to answer the charges I have made.

3.  I verify that the facts set forth in this complaint are true and correct to the best of my knowledge or information and belief. This verification is made subject to the penalties of Section 4904 of the Crimes Code (18 Pa.C.S.§4904) relating to unsworn falsification to authorities.

4.  This complaint consists of the preceding page(s) numbered __ through __

The acts committed by the accused, as listed and hereafter, were against the peace and dignity of the Commonwealth of Pennsylvania and were contrary to the Act(s) of the Assembly, or in violation of the statutes cited.
**(Before a warrant of arrest can be issued, an affidavit of probable cause must be completed, sworn to before the issuing authority, and attached.)**

_____
(Date)

_____ Tpr. [signature] #12153
(Signature of Affiant)

AND NOW, on this date, ____8/4/16____ I certify that the complaint has been properly completed and verified. An affidavit of probable cause must be completed before a warrant can be issued.

____11-3-04____
(Magisterial District Court Number)

_____ [signature]
(Issuing Authority)

COMMONWEALTH OF PENNSYLVANIA
DISTRICT COURT 11-3-04 AL
JAMES DIXON, DIST. JUDGE 11-3-04
HAZLE TWP, LUZERNE COUNTY
MY COMMISSION EXPIRES DEC. 31, 2017

" EXHIBIT - C "

| PBPP COMMONWEALTH OF PENNSYLVANIA BOARD OF PROBATION AND PAROLE PBPP-257N | NOTICE OF CHARGES AND HEARING | BOARD REPAROLE |
|---|---|---|

ARREST REPORT NO: 2    DATE OF RPT.    10/06/2016    josphillip    10/6/2016 1:51:11 PM

| OFFENDER NAME (Last, First, Middle Initial) SAVAGE, THEODORE | PAROLE NO. 3131T | SID NO. 157-27-16-1 | INST. & NO. SCRANTON INST PAROLE CB2674 |
|---|---|---|---|

| COUNTY/STATE OF CONV. | SENTENCE | MINIMUM DATE | RELEASE DATE | MAXIMUM DATE |
|---|---|---|---|---|
| CARBON/PA | 14Y 06M 00D 31Y 00M 00D | 08/19/2009 | 05/11/2015 | 05/15/2026 |
| COLUMBIA/PA | 14Y 06M 00D 31Y 00M 00D | 08/19/2009 | 05/11/2015 | 05/15/2026 |

| PRESENT OFFENSE | EFF. DATE OF DELINQ. (If applicable) |
|---|---|
| A) AGG ASLT; INTIMD OF WITNS/VIC A) ROBBERY | |

This notice is in reference to your upcoming hearing:

| ☐ PRELIMINARY HEARING | ☐ DETENTION HEARING | ☐ PROBABLE CAUSE |
| ☐ VIOLATION HEARING | ☒ REVOCATION HEARING | ☐ PANEL HEARING |

## CHARGES

You are charged with the following:

**NEW CRIMINAL CONVICTION:**

DATE OF ARREST: 8/15/2016

DATE OF OFFENSE: 8/4/2016

DATE OF CONVICTION: 9/29/2016

COUNTY/STATE OF CONVICTION: LUZERNE/PA

OFFENSE: VIOLATION OF INDIRECT CRIMINAL CONTEMPT ORDER/ M

DOCKET NO.: 8131 OF 2016 #1

SENTENCE: 6 MONTHS PROBATION

OFFENDER'S SIGNATURE: X _[signature]_    DATE SIGNED: _____
You are now being charged with the above additional violations which will be heard along with the original charges at your violation and/or revocation hearing.

| HEARING DATE AND TIME | PUBLIC DEFENDER OR PRIVATE ATTORNEY LUZERNE COUNTY PD PA | LOCATION SCI - RETREAT 660 STATE ROUTE 11 HUNLOCK CREEK, PA 18621 |
|---|---|---|

| AGENT NAME/SIGNATURE/DATE SEROCK, PAUL | SUPERVISOR NAME/SIGNATURE/DATE _[signature]_ PHILLIPS, JOSEPH    Date    10/6/16 | OFFICE NAME SCRANTON D.O. |
|---|---|---|

"Exhibit -A"

" EXHIBIT  -  D "

## IN THE COURT OF COMMON PLEAS
## OF LUZERNE COUNTY

COMMONWEALTH OF PENNSYLVANIA,
A. Sperrazza
A.D.A.                                    : NO. 8131 of 20 16

      v.

THEODORE SAVAGE
               J. Talo, Esq.    : Indirect Criminal Complaint
Defendant                                           #1 (8-4-16)
D.O.B. 2-16-1968                         : Violations #2 (8-23-16)

### INDIRECT CRIMINAL CONTEMPT ORDER

_____ ORDER OF DISPOSITION

___X___ ORDER OF DISPOSITION AND SENTENCE

_____ SENTENCING ORDER

AND NOW, to wit, this 29th day of SEPTEMBER, 2016, IT IS ORDERED
AND DECREED AS FOLLOWS:

                           #1 (8-4-16)
Indirect Criminal Contempt Complaint filed #2 (8-23-16) of 20 16;
Violation Number: #1 + #2

Court Findings (optional):
      - AFTER A HEARING BEFORE THE COURT:
DEFENDANT WAS FOUND VIOL #1- GUILTY
                    VIOL #2- NOT GUILTY
* DEFT IS RELEASED ON THIS MATTER PENDING OTHER
DETAINERS.

PFA REMAINS IN EFFECT

1. _____ Defendant's **guilty plea** is hereby accepted and entered.

2. ___X___ Defendant is **found guilty.** VIOL #1

3. ___X___ Defendant is **found not guilty.** VIOL #2

2016 SEP 29 PM 1:12
FILED
PROTHONOTARY
LUZERNE COUNTY

4. _____ A Pre-Sentence Investigation shall be conducted by the Luzerne County Adult Parole & Probation Department and provided to the Judge's chambers three (3) days prior to sentencing at the Luzerne County Courthouse, Third Floor, 200 North River Street, Wilkes-Barre, Pennsylvania 18711.

Judge: _____

Sentencing Date: _____

5. _____ Defendant is hereby sentenced to a term of incarceration at the

Luzerne County Correctional Facility for a period \_\_\_ _____

_____

_____ Defendant is hereby sentenced to a term of Probation for a period of

\_\_\_\_ (6) SIX MONTHS PROBATION _____

_____

_____ Defendant is fined $_____

6. _____ Defendant is hereby sentenced to the following terms and conditions:

- ☐ Drug/Alcohol Evaluation-Follow recommendations
- ☐ Mental Health Evaluation-Follow recommendation
- ☐ Anger Management Assessment -Follow recommendations
- ☒ Batterer's Intervention – Follow recommendations IF DEFT HAS NOT COMPLETED ALREADY
- ☐ Follow all rules and regulation of the Luzerne County Adult Probation and Parole
- ☐ No Drugs & Alcohol (Except by a Doctor's Prescription)
- ☐ Do not Frequent Places Serving Alcohol or Drugs
- ☐ Do not Associate with Persons Using Drugs or Alcohol
- ☐ Random Drug and Alcohol Testing
- ☐ _____ Hours Community Service
- ☐ Luzerne County Drug & Alcohol Case Management or their designee shall conduct a drug & alcohol assessment to determine the necessary level of care.
- ☐ Report to Probation immediately after Court
- ☒ Defendant Advised of Appeal Rights

7. The PFA is extended _____.

BY THE COURT:

_____ J.

2

" EXHIBIT - E "

COMMONWEALTH OF PENNSYLVANIA     : IN THE COURT OF COMMON PLEAS
                                     :       OF LUZERNE COUNTY

v.                                        :

                                       :       CRIMINAL DIVISION

THEODORE SAVAGE                      :

                     Defendant         :    NO. 8131   OF    2016

## O R D E R

AND NOW, this ⸺ day of December, 2016, IT IS HEREBY ORDERED that,

upon review and a hearing of Defendant's Motion to Terminate Probation and or Vacate

Judgment with regard to the above-captioned matter, said Motion is GRANTED. Defendant's

probation is hereby terminated effective today, December 2, 2016.

     It is further Ordered the oral petition of Janan Tallo, Esquire, to withdraw as counsel, is

GRANTED.

                           BY THE COURT,

                                 LESA S. GELB               J.

Copies:

District Attorney's Office

Theodore Savage, #CB-2674
SCI Retreat
660 State Route 11
Hunlock Creek, PA 18621

Janan Tallo, Esquire
Office of Indigent Counsel



" EXHIBIT – F "

**JUDGE'S CHAMBERS**
ELEVENTH JUDICIAL DISTRICT
LUZERNE COUNTY COURT OF COMMON PLEAS
200 NORTH RIVER STREET
WILKES-BARRE, PA
18711-1001

(570) 825-1617
FAX (570) 820-6356



**LESA S. GELB**
JUDGE

November 3, 2020

Chairman Theodore Johnson
Pa. Board of Prob. & Parole
1101 S. Front Street, Suite 5100
Harrisburg, PA 17104

> Re:   Stacy R. Savage v. Theodore B. Savage
>       Luzerne County Docket No. 8131 of 2016

Dear Mr. Johnson:

Enclosed please find a copy of an Order dated April 11, 2017 with regard to the above referenced Protection from Abuse matter.

If you need anything further, please contact my chambers.

Thank you.

Sincerely,

Lesa S. Gelb, Judge

LSG/jb

cc: Theodore Savage

STACY R. SAVAGE

Plaintiff

v.

THEODORE B. SAVAGE

Defendant

: IN THE COURT OF COMMON PLEAS
: OF LUZERNE COUNTY
:
:
:
: PROTECTION FROM ABUSE
:
:
: NO. 8131  OF  2016

## ORDER

AND NOW, this _11th_ day of April, 2017, upon motion of the parties to this action,

and after hearing in open Court where both parties agree to the termination of the December 2,

2016 PFA Order, it is hereby ORDERED AND DECREED that the PFA Order entered in this

matter is hereby terminated and dismissed.  Defendant may return to 212 Hope Street, Hazle

Township, PA 18201.

The Office of Judicial Records/Prothonotary is directed to serve notice of the entry

of this Order pursuant to Pa.R.C.P. 236

BY THE COURT,

LESA S. GELB                                 J.

Copies:

Theodore Savage, #CB-2674
SCI Retreat
660 State Route 11
Hunlock Creek, PA 18621

Stacy R. Savage
212 Hope Street
Hazle Township, PA 18201

PFA Office

" EXHIBIT - G "



RECEIVED

OCT 0 9 2020

SCI MAHANOY
PAROLE OFFICE

# COMMONWEALTH OF PENNSYLVANIA
# PENNSYLVANIA PAROLE BOARD

1101 S. Front Street
Harrisburg, Pa. 17104 - 2519

NOTICE OF BOARD DECISION

NAME: THEODORE SAVAGE

PAROLE NO : 3131T

INSTITUTION: SCI - MAHANOY

INSTITUTION NO: CB2674

AS RECORDED ON SEPTEMBER 29, 2020 THE PENNSYLVANIA PAROLE BOARD RENDERED THE FOLLOWING DECISION IN YOUR CASE:

FOLLOWING AN INTERVIEW WITH YOU AND A REVIEW OF YOUR FILE, AND HAVING CONSIDERED ALL MATTERS REQUIRED PURSUANT TO THE PAROLE BOARD IN THE EXERCISE OF ITS DISCRETION, HAS DETERMINED AT THIS TIME THAT: YOU ARE GRANTED PAROLE/REPAROLE. THE REASONS FOR THE BOARD'S DECISION INCLUDE THE FOLLOWING:

YOUR PARTICIPATION IN AND COMPLETION OF PRESCRIBED INSTITUTIONAL PROGRAMS.

YOUR POSITIVE INSTITUTIONAL BEHAVIOR.

THE POSITIVE RECOMMENDATION MADE BY THE DEPARTMENT OF CORRECTIONS.

YOUR DEMONSTRATED MOTIVATION FOR SUCCESS.

YOUR ACCEPTANCE OF RESPONSIBILITY FOR THE OFFENSE(S) COMMITTED.

YOU ARE REPAROLED TO AN APPROVED PLAN UPON CONDITION THAT THERE ARE NO MISCONDUCTS.

PAROLE RELEASE SUBJECT TO DETAINERS

YOU SHALL MAINTAIN EMPLOYMENT AS APPROVED BY PAROLE SUPERVISION STAFF. IF UNEMPLOYED YOU SHALL ENGAGE IN AN ACTIVE JOB SEARCH AND PROVIDE VERIFICATION AS DIRECTED BY PAROLE SUPERVISION STAFF.

(CONTINUE ON PAGE 2)

PAROLE VIOLATION MAX DATE: 02/23/2029

CC: DISTRICT ATTORNEY

CLIENT COPY
SMART COMMUNICATIONS/PADOC
INSTITUTIONAL PAROLE OFFICE
SCI - MAHANOY
PO BOX 33028
ST PETERSBURG FL 33733-8028

NOTICE OF BOARD DECISION
PBPP 15(08/02) 1 of 2

"EXHIBIT-A"

PAROLE NO:   3131T

(CONTINUED FROM PAGE 1 )

YOU SHALL SUPPORT DEPENDENTS, IF ANY.

YOU SHALL NOT DIRECTLY OR INDIRECTLY HAVE CONTACT OR ASSOCIATE WITH THE CO-DEFENDANT(S) OR GANG MEMBERS FOR ANY REASON.

YOU SHALL NOT DIRECTLY OR INDIRECTLY HAVE CONTACT OR ASSOCIATE WITH PERSONS WHO SELL OR USE DRUGS, OUTSIDE A TREATMENT SETTING OR POSSESS DRUG PARAPHERNALIA.

YOU SHALL ACHIEVE NEGATIVE RESULTS IN SCREENING TESTS RANDOMLY CONDUCTED BY THE BOARD TO DETECT YOUR USE OF CONTROLLED SUBSTANCES AND DESIGNER DRUGS, AS DESIGNATED BY THE CONTROLLED SUBSTANCE, DRUG, DEVICE AND COSMETIC ACT, OR TO DETECT YOUR USE OF ALCOHOL, OR BOTH.  YOU ARE RESPONSIBLE FOR ALL TESTING COSTS.

YOU SHALL NOT CONSUME OR POSSESS ALCOHOL UNDER ANY CONDITION FOR ANY REASON.

YOU SHALL NOT ENTER ESTABLISHMENTS THAT SELL OR DISPENSE ALCOHOL EXCEPT AS APPROVED BY PAROLE SUPERVISION STAFF.

YOU SHALL NOT DIRECTLY OR INDIRECTLY HAVE CONTACT WITH VICTIM(S), OR VICTIM'S FAMILIES, INCLUDING CORRESPONDENCE, TELEPHONE CONTACT, OR COMMUNICATION THROUGH THIRD PARTIES WITHOUT PRIOR WRITTEN PERMISSION OF PAROLE SUPERVISION STAFF.

YOU SHALL NOT POSSESS AMMUNITION UNDER ANY CONDITION OR FOR ANY REASON.

YOU SHALL ABIDE BY CONDITIONS SET BY PAROLE AGENT.

YOU SHALL PAY A MONTHLY SUPERVISION FEE AS DETERMINED BY PAROLE SUPERVISION STAFF TO THE PAROLE BOARD WHILE UNDER SUPERVISION WITHIN THE COMMONWEALTH OF PENNSYLVANIA (ACT 35 OF 1991).

WHEN RELEASED TO THE COMMUNITY YOU MUST REPORT IN PERSON TO THE DISTRICT OFFICE OR SUB OFFICE THE NEXT BUSINESS DAY (MONDAY THROUGH FRIDAY) BETWEEN THE WORKING HOURS OF 8:30 A.M. - 5:00 P.M. THE DECISION ANNOUNCED BY THIS BOARD ACTION (PBPP-15) WILL NOT TAKE EFFECT UNTIL YOU HAVE SIGNED THE CONDITIONS (PBPP-11), AND THE RELEASE ORDERS (PBPP-10) HAVE BEEN ISSUED.  YOU REMAIN UNDER THE JURISDICTION AND CONTROL OF THE DEPARTMENT OF CORRECTIONS UNTIL YOU HAVE SIGNED THE PBPP-11, AND THE PBPP-10 HAS BEEN ISSUED.  THIS PBPP-15 DOES NOT AUTHORIZE YOU TO CHANGE YOUR RESIDENCE FROM ANY COMMUNITY CORRECTIONS CENTER OR GROUP HOME IN WHICH YOU MAY BE RESIDING WHEN YOU RECEIVE IT.

BMH  09/29/2020

PAROLE VIOLATION MAX DATE:  02/23/2029

CC: DISTRICT ATTORNEY

CLIENT COPY
SMART COMMUNICATIONS/PADOC
INSTITUTIONAL PAROLE OFFICE
SCI - MAHANOY
PO BOX 33028
ST PETERSBURG FL 33733-8028

Deborah L Carpenter
Board Secretary
NOTICE OF BOARD DECISION
PBPP 15(08/02) 2 of 2

" EXHIBIT - H "

Theodore B. Savage
Parole #: 3131-T
Institution #: CB-2674
SCI - Mahanoy

## PAROLE RE-ENTRY SUCCESS PLAN

### Re-Entry Statement

I am determined, motivated, and prepared for a successful reentry into my community where I will be a law abiding citizen, contributing productively to my community.

### Short Term Goals

1. Report to, and make contact with my Parole Supervision Staff in the Scranton District Office for instruction and any special conditions deemed appropriate by my Parole Agent.

2. Immediately contact Northeast Counseling Services, 750 East Broad Street, Hazleton, PA 18201, (570) 455-6385 seeking Mental Health Treatment and continuation of treatment as deemed appropriate by professional mental health treatment staff.

3. Immediately contact AMAZON, Hazleton, to start full-time employment.

4. Enroll in the Luzerne County Community College, CDL Truck Driving Training Program.

5. Make contact with my church Pastor, Corey J. Adams, Victory Bible Church to arrange Christian based marriage and relationships counseling.

### In Three Years

I see myself employed full-time as a commercial truck driver for AMAZON Company to better support myself, spouse and family. I also see myself volunteering when time permits at the Wilkes-Barre SPCA, my church, and through community projects arranged by the Greater Hazleton Chamber of Commerce, and HAZLETON P.O.W.E.R, i.e Clean-Up Projects, Grafitti Cover-Up Projects, etc.

### Support System/Healthy Relationships

1. PBPP, Parole Supervision Staff/Parole Agent.

2. Pastor Corey J. Adams, Victory Bible Church, 2 Main Street, Junedale, PA 18230.

3. Ida Taylor, 571 Laurel Drive, Tobyhanna, PA 18466 (Aunt) (570) 216-4561, Cell: (570) 223-4471

4. Stacy Renee Savage, 212 Hope Street, Hazle Township, PA 18201 (Spouse) (570) 599-4350

5. Mental Health Treatment staff/professionals.

Home Plan

212 Hope Street, Hazle Township, PA 18201 (Marital Home)

Alternatively

571 Laurel Drive, Tobyhanna, PA 18466 (Aunts Home)

Employment Plan

Upon release I will be employed full-time at AMAZON, Hazleton Branch.

Additionally, while I work at AMAZON, I will be attending Luzerne County Community College, 1333 South Prospect Street, Nanticoke, PA 18634, (800) 377-5222, and be a student in their CDL Truck Driver Training Program, to obtain my CDL to be employed long term as a Truck Driver for AMAZON Company.

Financial Obligations

As stated above, I will be immediately employed full-time at AMAZON, Hazleton, which will provide me support for my financial obligations, i.e. court costs, restitution, supervision fees, household utility costs, etc.

Additionally, my support system above, particularly my spouse and aunt have agreed to help me financially as needed to fulfill my financial obligations.

Mental Health Treatment

Upon my release I will immediately apply for medical assistance through the Luzerne County Assistance Office, 10 West Chestnut Street, Hazleton, PA 18201, (570) 459-3800. I anticipate starting this process before release through the SCI-Mahanoy, Reentry Services Office.

I will immediately contact and make arrangements at Northeast Counseling Services, 750 East Broad Street, Hazleton, PA 18201, (570) 455-6385, for Mental Health Treatment by professional mental health treatment staff.

I will follow all treatment recommendations and orders, i.e. taking and continuing medications, and participating in any groups, classes or other treatment recommended.

## Leisure Time/Community Activities

1. I will be volunteering spare time at the Luzerne County SPCA, 524 E. Main Street, Wilkes-Barre, PA 17702. Contact Person: Mr. Joseph Stortz

2. I will volunteer spare time at my church helping in building maintenance, grounds work, etc., Victory Bible Church, 2 Main Street, Junedale, PA 18230. Contact Person: Pastor Corey J. Adams.

3. I will volunteer at the Salvation Army Thrift Store, and Soup Kitchen, Broad Street, Hazleton, PA 18201.

4. I will volunteer time to productively give back to my community at the Greater Hazleton Chamber of Commerce and Hazleton P.O.W.E.R! Helping in community clean-up projects, Graffiti Cover-Up Projects, and other events of Hazleton P.O.W.E.R!

## Transportation

I have a valid Pennsylvania Driver's License, as well as a reliable automobile as a means of transportation to report the the Scranton District Parole Office, work, school, appointments and other things and activities.

## Identification

I have current identification here at the facility held by the business office, i.e., State I.D., and Social Security Card. Additionally, at home I have my renewed "picture card" to go get my photo Driver's License from the DMV, Hazleton.

## Action Steps/Programs Completed

1. Batterer's Intervention Group; (DOC Recommended)

2. Anger Management; (Voluntary)

3. Relationships Workshop, Retreat RSO Program; (Voluntary)

4. Stay On Track Workshop, Retreat RSO Program; (Voluntary)

5. Pathways To Success, SCI-Retreat, Education Department; (Voluntary)

6. Real Colors, PBPP Class, SCI-Retreat; (Voluntary)

7. Character Developement, SCI-Graterford; (Recommended)

8.   DOC Citizenship Program, SCI-Graterford; (DOC Recommended)

9.  Violence Prevention, High Intensity; (DOC Recommended)

10. National Reentry Week Seminars - 2018 - including topics: Incorporating Spirituality Into Reentry, How To Suceed On Parole, Gateway To Reentry, and Reentry Career Fair; (Voluntary)

11. Life Ministries Program - 2018 - including topics: Stretching Thinking Skills, Sharpening Life Skills, Developing Faith In Jesus, Keeping The Mind Sharp, and Being a Positive Example in the Facility and in the Community; (Voluntary)

12. Day of Responsibility, SCI-Retreat - 2017, 2018 & 2019; (Voluntary)

13. SCI-Retreat Reentry Services Office - 2018-2019, Victim Impact and Awareness, PBPP Colors, Relationships Workshop, Stay On Track Workshop, and Parole Supervision; (Voluntary)

14. National Reentry Week Seminars - 2019 - including topics: Career Link Presentation, D&A Presentation, BBC Presentation, Work Force Development Programming, Jubelee Ministries Reentry Seminar, Reentry and Successful Reentry, Inside Out Program, Wilkes University Presentation, Pa. Patient Assistance Program Presentation, and Parole Presentation by SCI-Retreat, Parole Supervisor, Jack Alversa; (Voluntary)

15. Stop Domestic Violence - Breaking The Cycle Seminar - 2019, SCI-Retreat, presentations by Tami Burke and J. Campbell of the Luzerne County Victims Resouce Center. (Voluntary)

16. Have maintained good institutional conduct since last seen by the Board, and have received good housing and work reports;

17. Have maintained and earned a Custody Level 2, minimum supervision Classification the last (3) years based on good institutional adjustment;

18. Have followed and complied with all Mental Health Treatment recommendations and treatment, including taking of medications as directed;

19. Have had a favorable recommendation for parole from the Department of Corrections, 2017, 2018, 2019, and currently for this review in 2020;

20. Returned for an Indirect Criminal Contempt, (M-3), for violating a PFA, that did not involve any type of physical violence;

- 4 -

21. Since initially granted parole by the Board in August, 2012, I have not committed any acts of violence, nor have I committed any acts of violence while incarcerated as a CPV from 2016 to present.

## Coping Skills/Conflict Resolution

**1. Negotiating:**

a. Decide if the other person and I have a difference of opinion;

b. Tell the other person what you think about the situation in a non-agresive, non-violent manner;

c. Ask the other person what he/she thinks about the situation;

d. Listen objectively to his/her answer;

e. Think about why the other person might think that way; and

f. Suggest a compromise.

Additionally:

1. Before I begin, ask myself why I feel upset;

2. Discuss one issue at a time;

3. No degrading language, utilize respect and honesty;

4. Express my feeling with words and take responsibity for them;

5. Take turns talking, and do not interupt the other person when talking;

6. No stonewalling;

7. No yelling, talk in a calm polite voice;

8. Take a time out if things get to heated; and

9. Attempt to come to a compromise and understanding.

**\* Domestic Violence - Power & Control Wheel**

**Do not** use intimidation, emotional abuse, isolation, minimizing, denying, blaming, children, male privilege, economic

- 5 -

abuse, coercion or threats for power and control, but rather utilize the Equility Non-Violence Wheel principles.

* Domestic Violence - Equility Non-Violence Wheel

I must utilize:

1. Non-Violent, Non-Threatening behavior;

2. Respect;

3. Trust & Support;

4. Honesty & Accountability;

5. Responsible Parenting;

6. Sharing Responsibility;

7. Economic Partnership; and

8. Negociation & Fairness.

* I must think through the pros and cons of both changing and not making a change which is the way to help me make sure I have fully considered a positive possible change.

I, Theodore B. Savage, commit to myself, those who love me, and my Parole Supervision Staff/Parole Agent, to become and continue to be a better, law abiding, productive member of my community upon my release on parole by the Board.

Date: 5-28-2020

By: _Theodore Savage_
Theodore B. Savage
SCI - Mahanoy, #CB-2674
301 Morea Road
Frackville, PA 17932

**Parolee**

TBS/

Attachments

- 6 -



**pennsylvania**
BOARD OF PROBATION AND PAROLE

## STATEMENT OF RESIDENCE

Send this form to the person who is offering you a home. When they return the completed form to you, forward the form to the Institutional Parole Office.

Return to:    OFFENDER NAME: Theodore Savage

INSTITUTION NUMBER: CB-2674

State Correctional Institution  Mahanoy

Frackville                    PA

[To be completed by home provider]                Please print (except for signature)

Institutional Parole Staff

I Stacy R. Savage        Spouse
    [Name]                  [Relationship i.e.: parent, friend, etc.]

212 Hope St., Hazle Twp., PA 18201
    (Street & Number, R.D. No. or Box No.) (City) (State & Zip Code)

hereby declare my willingness to provide living quarters for a minimum of six months to the above named if he/she is released on parole. I shall expect him/her to pay rent or board in the sum of $ O per _____ . I agree to take a friendly interest in this person as opportunity affords, and I shall cooperate with parole supervision staff by reporting any irregularities that may come to my attention.

Stacy R. Savage      5-26-20
    (Signature of home provider)      (Date)

_____
(Home Phone Number)

_____
(Work Phone Number & Hours/Days Worked)

(570) 599-4350
    (Cell Phone Number)

IMPORTANT: If the home is located in public or federal subsidized housing (HUD), you must have prior approval by the Housing Authority before completing this form. Parole supervision staff will be contacting them for approval.

If the offender's name is not on the lease, parole supervision staff must contact and inform the landlord as to the proposed plan. The landlord must agree to allow the offender to reside at the proposed residence.

PBPP-1
(Rev. 06/2014)

## MY RESOLUTION OF CHANGE

TO: MY GOD, MY WIFE, MY FAMILY, AND ALL WHOM THIS MAY REACH:

I DO solemnly resolve before God to take full
responsibility for myself, my actions, my wife, and my family.
I WILL love them, protect them, serve them, and teach
them the Word of God as the Spiritual leader of my home.
I WILL be faithful to my wife, to love and Honor her,
and be willing to lay down my life for her as
Jesus Christ did for me.
I WILL bless my family and teach them to love God with
all their hearts, all their minds, and all of their strength.
I WILL train them to Honor authority and live responsibly.
I WILL confront evil, pursue justice, and love mercy.
I WILL pray for others and treat them with
kindness, respect, and compassion.
I WILL work diligently to provide for the needs of my family.
I WILL forgive those who have wronged me
and reconcile with those I have wronged.
I WILL learn from my mistakes-poor decisions, repend my sins,
and walk with integrity as a man answerable to God.
I WILL seek to Honor God, be faithful to His church,
obey His Word, and do His will.
I WILL courageously work with the strength God provides
to fulfill this Resolution
for the rest of my life for His glory.


As for me and my home, we will serve the LORD.
Joshua - 24:15


Executed this 9th day of August, 2020.

_Theodore Savage_
Theodore Savage



Northeast Counseling Services
750 East Broad Street
Hazleton, PA 18201
Phone: (570)455-6385
Fax: (570)579-0355

Theodore Savage, #CB-2674
SCI-Mahanoy
P.O. Box 33028
St. Petersburg, Florida 33733

Dear Mr. Savage,

Northeast Counseling Services is a comprehensive behavioral healthcare provider founded in 1972 to serve the residents of central and southern Luzerne County. We have multiple services available to assist with an array of difficulties. I have enclosed pamphlets of some of the programs for you to review. However, to answer your direct questions:

1.  Does your counseling services accept "Public Assistance?"
    YES, Northeast Counseling Services contracts with Medical Assistance for the services provided.
2.  Would I be able to get mental health treatment and counseling at your office?
    YES, Northeast Counseling Services provides many different levels of counseling and we have on staff psychiatrists to continue your prescribed medications.
3.  Can you provide "marriage counseling?"
    YES, regardless on level of care, your therapist is trained to provide individual, family and marital counseling.

We do recommend that you review the enclosed pamphlets to understand the services available. In addition, we request that you speak with your counselor about a referral to Northeast Counseling Services. We accept faxed referral forms from the institution to begin the process. These referrals include demographics, the type of treatment you are currently receiving, medications (including dosage) and the charges for which you are incarcerated. By working together through the referral process Northeast Counseling Services will be able to determine the least restrictive service available and if available, arrange appointments prior to your release.

Thank you for reaching out for information on the services available at Northeast Counseling Services. Should there be any further questions, please feel free to reach out to the Intake Department, Monday through Friday 8:30am to 4:30pm at 570-455-6385.

Sincerely,

*Raina A. Cole, MSW*

Raina A. Cole, MSW
Director, Intake Services

Ref: 1831310 pg 3 of 21 for THEODORE SAVAGE

Honorable Leo Dunn, Chairman
Pa. Board of Prol. & Parole          Ida Taylor
1101 S. Front St.                    571 Laurel Dr.
Harrisburg, Pa. 17104                Tobyhanna, Pa
                                     18466

Dear Mr. Dunn;                          4/18/20
        I write this letter regarding my
nephew, Theodore Savage, Parole # 3131-T
who is at SCI Retreat, Mahanoy and is
scheduled for review.

        He and his wife, Stacy, went
through some very hard times. She
did a lot of drinking, which is
something Ted did not do or like her to do.
This resulted in her comming home from
work drunk and having arguments. She
since has stopped drinking, over 2 years
ago, and became very involved in
their church, Victory Bible Church in
Junedale, Pa. She now works at
Amazon and in addition to being sober
feels sure Ted would be hired there.
They are not a threat to society
and are Christians.

        Ted being at SCI Retreat, Mahanoy
is a financial and emotional burden
to both Stacy and myself. As Stacy

can no longer drive, she lost her driving license until 2029, I try to take her to visit Ted as often as I can. I am 81 years old and do very little driving now, but am the only family he has. I also order him food that is delivered to him every several months.

I love them both and know they have both learned a ~~lesson~~ lesson from this and want very much to be back together again and be able to have a very happy healthy life together.

Please help them. It would also be a big help to me. Before this happened, Ted would often come to my home and help me with things I can no longer do, Mow grass, landscaping and many outside and inside chores that needed repair, plus grilling good foods and ~~may~~ many happy meals for the three of us.

I want to Thank You for all you can do to help Ted get released. I appreciate all you can do. Thank You very much.

Ted's aunt Ida

## Pennsylvania Department of Corrections
### Correctional Plan - Evaluation

8/9/2017 7:44:58 AM

Production

INMATE NAME: SAVAGE, THEODORE          INMATE #: CB2674   Location: E-A-1016   FACILITY: RET

Program Name: Batterers Group                    Start Date: 05/10/2017    End Date: 08/07/2017

Number of Program Sessions: 26      Number of Sessions Attended: 24    Length of Sessions: 1.5 Hrs

Facilitator: Blazick              Evaluated by: Blazick       Date: 08/07/2017   Status: Completed

**Participation:**

    Satisfactory (Completes >= 80% of all journals/homeworks/skill training)

**Knowledge Acquired:**

    Satisfactory (Demonstrates acquired knowledge of >= 80% of group objectives)

**Aftercare Recommended:**

    Yes - Other (See Comments)

**Reason for Failure to Complete the Program:**

**Reason for Discharge Prior to Completion:**

**Comments:**

    The inmate successfully completed group. He demonstrated comprehension of the concepts specific to the group and was provided with motivational and cognitive behavioral support to assist in guiding the development of a re-entry plan that may include continued counseling to address any other educational, vocational, or therapeutic needs specific to him. It was strongly suggested that all recommendations set forth by this DOC program and all stipulations set forth by the PBPP be adhered too.

cc: Inmate
    DC-14(CP tab)
    Facility Parole Office
    (With ICSA Document)



# *Anger Management*

*Certificate of Completion*

*is hereby granted to*

Theodore Savage CB2674

Name

SCI Retreat

Facility

*for completing the voluntary Anger Management Program*

7/26/19

Date

A. DeSantis MS, NCC

*Mental Health Professional*

Case 3:20-cv-02354-DFB   Document 1   Filed 12/15/20   Page 59 of 92

# CERTIFICATE *Of* COMPLETION

## Theodore Savage CB2674

## RELATIONSHIPS WORKSHOP

RSO STAFF: Ms. Matoushek

ON THIS DAY: July 08, 2019

# CERTIFICATE *Of* COMPLETION

## Theodore Savage CB2674

## STAY ON TRACK WORKSHOP

RSO STAFF: _____ Ms. Matoushek

ON THIS DAY: _____ June 24, 2019

Ref: 711711 pg 3 of 6 for THEODORE SAVAGE

# Pastor Corey J. Adams



Greetings, my name is Corey Adams, and I am excited to be used by God to serve as your pastor. It is my prayer that as we study the Word of God together that we will grow closer to Christ. It is also my prayer that we will used of God as salt and light to the community here in Hazleton and to the world. I look forward to meeting and getting to know each of you.

## Background

I grew up in the Finger Lakes region of New York State. At the age of six I accepted Jesus Christ as my Lord and Savior. I was baptized on February 26, 1995 at Second Baptist Church in Auburn, NY.

I attended Davis College from 2003 – 2007 where I graduated from with my Bachelor's degree. My freshman year at Davis I began attending and serving at West Corners Baptist Church in Endicott, NY. During my nearly 15-years at the church I have served in roles from Adult Sunday School Teacher, Deacon, Trustee, Secretary, Treasurer, Song Leader, and Pulpit Supply.

From 2008 – 2015 I worked as a contractor at Lockheed Martin in Owego, NY serving in the IT Department. I went back to work at Davis College in February of 2015 where I have served as the Executive Assistant to Dr. Dino Pedrone, the President and now Chancellor of the college. I also serve as the College's Historian.

I have a passion for Bible Translation and for the Bibleless people groups in Papua New Guinea (PNG). In the summer of 2005 I took a two-month trip to PNG with Wycliffe Bible Translators.

The summer of 2017 I went with a group lead by Dr. Pedrone to Israel for a little over a week to experience the land of the Bible. In reading, studying, and preaching the Bible now I have a new perspective and outlook about many of the passages, which I hope I will be able to convey in the preaching and teaching of the Word.

I am looking forward to the new journey that God has us on and I pray that He will be glorified by it.

Victory Bible Church
2 Main Street
Junedale, Pennsylvania 18230

# CERTIFICATE OF RECOGNITION

*This certifies that*

THEODORE SAVAGE, #CB-2674

*has successfully completed the Scripture Memory Verse Book published by World Missionary Press, Inc., New Paris, IN 46553, U.S.A.*

## CONGRATULATIONS!

Signed this day of ___May 23rd   2020___

By: _____
*(Pastor/Teacher/Supervisor)*

Faith cometh by hearing, and hearing by the Word of God *(Romans 10:17).*

**World Missionary Press, Inc.**

Case 3:20-cv-02354-DFB   Document 1   Filed 12/15/20   Page 64 of 92

# COMMONWEALTH OF PENNSYLVANIA

# PA DEPARTMENT OF CORRECTIONS

*This is to certify that on September 21, 2018*

## THEODORE SAVAGE

*Has acquired  50  hours in Pathways to Success*

_____
School Principal

_____
Instructor

_____
Bureau Director

# Pathway to Success: Portfolio Products Checklist

Case 3:20-cv-02354-DFB   Document 1   Filed 12/15/20   Page 65 of 92

| Unit | Portfolio Product |
|---|---|
| O*NET Interest Inventory | ☑ Completed O*NET Interest Assessment<br>☑ Target Jobs Chart<br>☑ Foundation Skills Self-Appraisal<br>☑ Foundation Skills Priority List |
| Jobs Not Available Due to Criminal Record | ☑ Sample letter requesting exceptions or to accelerate the process of being job ready<br>☑ Barriers to Target Jobs |
| Understanding Job Opportunities at Location of Reentry | ☑ Completed budget based on potential wages for 2 selected occupations in likely area of reentry<br>☑ Revised occupational choice list, as applicable |
| Introduction to Career Pathways | ☑ Career Pathway Map<br><br>☑ O*NET Jobs Summaries: Notes Sheet: List of key Knowledge, Skills, and Abilities needed for targeted occupations (experience, training, etc.) |
| Introduction to Opportunities at SCIs | ☑ Thinking About My Career Pathway |
| Creation of a Career Plan | ☑ Detailed Career Pathways Plan which includes:<br>  o concrete goals and steps identified while incarcerated (e.g., training, exploration)<br>  o associated skills, education, and experience<br>  o potential reentry opportunities<br>☑ Reviewing My Target Job |
| Introduction to PA CareerLink® | ☑ Expanded Career Pathway plan that includes relevant PA CareerLink® and services and resources that can support him/her in working towards stated career goals. |
| Resume, Cover Letter, and Applications | ☑ Resume<br>☑ Student created job inquiry letters<br>☑ Student created cover letters<br>☑ Several job application models |
| Interview Skills | ☑ Interview script that includes students' skills, experience, education, personal attributes, employability skills, and criminal record. |
| What to Expect When Paroled | ☑ A parole hearing script that reflects positive language and behaviors<br>☑ Adjusted Career Pathway plan with reentry considerations |
| Finalizing Your Career Pathway Plan | ☑ Completed Employability Skills Self-Appraisal<br>☑ Completed Final Career Pathway Plan with 2 identified next steps. |

Theodore Savage
#CB-2674

Completed
9-21-18

Revised 11/16/2017



## pennsylvania
### BOARD OF PROBATION AND PAROLE

*This Is To Certify:*

# Theodore Savage CB2674

## HAS SUCCESSFULLY COMPLETED

# Real Colors®

## 6 Hours of Training On

# July 30, 2018 at SCI Retreat



**Facilitator**

# COMMUNITY DEVELOPMENT ORGANIZATION

## 2017

## Day of Responsibility

THIS CERTIFICATE IS PRESENTED TO

# Theodore Savage

FOR HIS CONTINUOUS EFFORTS TOWARDS HELPING TO MAKE A CHANGE NOT ONLY IN HIS OWN LIFE BUT WITHIN THE LIVES OF THOSE AROUND HIM THROUGH HIS DEDICATION TO BECOMING A BETTER MAN. RECOGNIZING THE HARMS CAUSED ISN'T ALWAYS AN EASY TASK, IT TAKES HUMILTY AND ACCEPTANCE BEFORE THE PROCESS OF CHANGE CAN BEGIN. THEREFORE, WE RECOGNIZE THE STRIDE YOU HAVE MADE BY TAKING THIS STEP.

Wednesday, May 31, 2017

Mr. Todd Kolbicka
Activities Manager

Chester Hollman
C.D.O. President

Case 3:20-cv-02354-DFB   Document 1   Filed 12/15/20   Page 68 of 92

# COMMUNITY DEVELOPMENT ORGANIZATION
# 2018 DAY OF RESPONSIBILITY

### THIS CERTIFICATE IS PRESENTED TO:

# THEODORE SAVAGE

### ON JUNE 6, 2018

FOR PARTICIPATING IN THIS DAY OF RESPONSIBILITY AND OF ACCOUNTABILITY. THE OUTSTANDING VOLUNTEER SERVICE THAT YOU'VE PUT FORTH IS WORTHY AND HOLDS MERIT, IT IS RECOGNIZED. THE WILLINGNESS TO ACCEPT THE CHALLENGE TO MAKE AMENDS FOR THE HARMS CAUSED, IT IS RECOGNIZED. THIS DAY IS ONE OF WHERE AN EARNEST COMMITMENT TO BECOME A MORE RE-SPONSIBLE MAN FOR HIMSELF, HIS FAMILY AND COMMUNITY HAS BEEN MADE, AND AGAIN, IT IS RECOGNIZED.

Date 6-19-18

CDO LONG TERM DIRECTOR

Date 6-19-18

CDO STAFF LIAISON

© 2016 Great Papers

# The Prisoner's Pledge #CB-267

Prisoners who recognize the responsibility they share for past behaviors that have harmed their victims, families and communities adopt the following pledge.

1. I, _Theodore Savage_ hereby pledge to dedicate a portion of every day, while serving my sentence and after my release, to diligently strive to improve myself spiritually, intellectually, politically and socially so that I will no longer participate in any lifestyle that makes me an agent of destruction in my community. I will not make any excuses for my behavior, recognizing that there is no justification for harming innocent people in any way, regardless of the things that happen in my life.

2. I will continue to educate myself about the impact of my actions on the victims, my family and the community. I will take seriously my responsibility to repair the harms that I have caused and to be in search of practical and symbolic ways in which to do so.

3. I will make it my duty to become fully aware of the impact that drugs and other criminal activity have on the overall deterioration of the quality of life in my community. I hereby pledge to join the ranks of those that work to improve the familial and communal conditions of society.

4. I pledge whenever possible to write letters to my family members, significant others, religious affiliates, individuals who have been impacted by my actions, and the City Council of my community, apologizing for my past behavior. I am seeking their forgiveness and asking for another chance to prove my love to them and dedication to my community. As a symbolic gesture, I will write a letter to my victim, taking responsibility for my crime, even though I am not permitted to send the letter.

5. I pledge to encourage my friends and associates to change their thinking and behavior as an effort towards improving the quality of life in the community and to begin a genuine healing process. I promise to never allow peer pressure or popular opinion to deter me from the mission of convincing my associates that the welfare of the community in the best interest of us all.

6. I pledge that beginning today, I will strive with those who value family and the community as I do and figure out a way and a means to support growth and progress in both. I will especially strive to assist the youth in walking a more honorable path; unlike the one I have traveled.

7. I pledge to do the following as a way of demonstrating a commitment to my responsibility for my actions and improving the quality of life: _Show empathy And forgiveness to All I come in contact with. Volunteer time to community to give back for my wrongdoing. Be law Abiding productive member of my community_

8. I pledge to recite my pledges (made above) to myself each day of my incarceration through my actions and continue to do so after my release as a constant reminder of my duties and responsibilities to work diligently on improving the quality of life in my community, for my family and for myself.

I hereby state in the honor of my word that I will forever remain a part of the solution and will never again live my life as part of the problem.

Signature _Theodore Savage_   Date _6-6-18_

Witness

Witness

Case 3:20-cv-02354-DFB · Document 1 · Filed 12/15/20 · Page 70 of 92

# COMMUNITY DEVELOPMENT ORGANIZATION
# 2019 DAY OF RESPONSIBILITY

## THIS CERTIFICATE OF APPRECIATION IS PRESENTED TO:

# THEODORE SAVAGE

April 10, 2019

THE COMMUNITY DEVELOPMENT ORGANIZATION WOULD LIKE TO RECOGNIZE YOU FOR YOUR ATTENTIVE ATTENDANCE AT THIS YEARS DAY OF RESPONSIBILITY. CHOOSING TO BE A PART OF THIS DAY IS YET ANOTHER STEP TOWARDS ONES ACKOWLEDGE-MENT THAT RESPONSIBILITY IS A DECISION AND CHOICE THAT ONLY THE INDIVIDUAL THEMSELVES CAN MAKE. WE HOPE THAT THE PRESENTATIONS THAT WERE PRESENT-ED DURING THIS EVENT INSPIRED YOU TO GO FORTH IN BECOMING THE BEST VERSION OF YOURSELF RESPONSIBLY.

CDO LONG TERM DIRECTOR     4/10/2019   Date

CDO STAFF LIAISON     4/10/19   Date

DOC, SCI Retreat, Education Dept. declares that

_Theodore Savage_

Has successfully completed the Flagger Training
Course in accordance with PennDOT guidelines.


K.R. Crawford ,Trainer     Date _10-25-18_

Signature

" EXHIBIT - I "

| Form DC-135A<br><br>**INMATE'S REQUEST TO STAFF MEMBER**<br><br>~~Re: Parole NO. 3131-T~~<br><br>~~Parole Supervisor~~ | Commonwealth of Pennsylvania<br>Department of Corrections<br><br>INSTRUCTIONS<br>Complete items number 1-8. If you follow instructions in preparing your request, it can be responded to more promptly and intelligently. |
|---|---|

| 1. To: (Name and Title of Officer)<br>~~Institutional Parole Office~~ | 2. Date:<br><br>October 12, 2020 |
|---|---|
| 3. By: (Print Inmate Name and Number)<br>Theodore Savage, J.D., #CB-2674<br><br>*Theodore Savage*<br>Inmate Signature | 4. Counselor's Name:<br>Ms. Gladfelter<br><br>5. Unit Manager's Name:<br>Ms. Griffin |
| 6. Work Assignment:<br>Unit Worker | 7. Housing Assignment:<br>G-C-6 |

RECEIVED OCT 14 2020 SCI MAHANOY PAROLE OFFICE

8. Subject: State your request completely but briefly. Give details.

Dear Sir/Madam:

    I was paroled October 1, 2020, and sent my Home-Plan to your office for submission to the Scranton District Office last week.

    I have not received anything from your office indicating it received my Home-Plan.

    Also, I have not been called for my parole urine yet.

    Can you please advise me whether its your office, or the Board's Harrisburg Office that is in charge of processing my Home-Plan and getting me my parole urine, so that the Board can issue its Release Order?

    Thank you for your time and attention in these matters. I note I have a job awaiting me at AMAZON, and they are expecting me to start soon.

cc: John C. Manning, PBPP, Office of Chief Counsel
    File

9. Response: (This Section for Staff Response Only)

Your plan went out for investigation on 10/13/20. You will not take a urine until your plan comes back approved.

To DC-14 CAR only ☐      To DC-14 CAR and DC-15 IRS ☐

STAFF MEMBER NAME _____ DATE 10/14/20
         Print               Signature

" EXHIBIT - J "



## pennsylvania
### PAROLE BOARD

## Results of Parole Plan Investigation

**TO:**  Name:          SAVAGE, THEODORE

Institution No.:    CB2674

Housing Unit:    G - C

From:     IPA M. BIANCONE                    Date:  10/21/2020

Parole Office:

SCI-          MAHANOY

Your parole plan at STACY SAVAGE has been:

☐ APPROVED

☒ REJECTED – because of (list reason(s) below):


☐ REJECTED—I have another home plan and will submit once the plan form is completed.

☐ REJECTED – please place me in a Bureau of Community Corrections bed.

Accepted at CCC

Bed date of

Rejected because (list reason(s) below):


_____          _____
Inmate Signature                                          Date


_____          _____
Parole Staff Signature                                   Date

cc:      DOC Unit Manager
         Central Office File

PB 31 | RVSD 03.2020

" EXHIBIT - K "

CLOSED,JM,PROSEREF,SCR

# United States District Court
# Middle District of Pennsylvania (Scranton)
## CIVIL DOCKET FOR CASE #: 3:14-cv-00604-MEM-TMB

Savage v. Jones et al                                    Date Filed: 03/31/2014
Assigned to: Honorable Malachy E Mannion                 Date Terminated: 08/19/2014
Referred to: Magistrate Judge Thomas M. Blewitt          Jury Demand: Plaintiff
Cause: 42:1983 Civil Rights Act                          Nature of Suit: 440 Civil Rights: Other
                                                         Jurisdiction: Federal Question

**Plaintiff**

**Theodore Savage**                    represented by **Theodore Savage**
                                                       CB-2674
                                                       SCI - Retreat
                                                       SPECIAL MAIL - OPEN IN THE
                                                       PRESENCE OF THE INMATE
                                                       660 State Route 11
                                                       Hunlock Creek, PA 18621
                                                       PRO SE

V.

**Defendant**

**Robert G Jones**                     represented by **John C. Manning**
                                                       PA Board of Probation and Parole,
                                                       Office of Chief Counsel
                                                       1101 South Front Street
                                                       Suite 5100
                                                       Harrisburg, PA 17104
                                                       717.787.8126
                                                       Email: jmanning@pa.gov
                                                       *ATTORNEY TO BE NOTICED*

**Defendant**

**Donald Harrell**                     represented by **John C. Manning**
                                                       (See above for address)
                                                       *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/31/2014 | 1 | COMPLAINT against Donald Harrell, Robert G Jones, filed by Theodore Savage. (Attachments: # 1 Notice)(lh) (Entered: 03/31/2014) |
| 03/31/2014 | 2 | MOTION for Leave to Proceed in forma pauperis by Theodore Savage.(lh) (Entered: 03/31/2014) |
| | | |

| 03/31/2014 | 3 | MEMORANDUM OF LAW by Theodore Savage re 1 Complaint. (lh) (Entered: 03/31/2014) |
|---|---|---|
| 03/31/2014 | 4 | MOTION for Serive of Original Process by US Marshal by Theodore Savage.(lh) (Entered: 03/31/2014) |
| 03/31/2014 | 5 | STANDING PRACTICE ORDER sent to Plaintiff. (lh) (Entered: 03/31/2014) |
| 03/31/2014 | | Case assigned to Judge Mannion and Magistrate Judge Blewitt. (kn) (Entered: 03/31/2014) |
| 04/02/2014 | 6 | ORDER 1) Plaintiff's motion for leave to proceed in forma pauperis 2 is construed as a motion to proceed without full prepayment of fees and costs. 2) Said motion is granted. 3) Plaintiff's motion for service of original process by US Marshal 4 is granted. 4) The Clerk of Court is directed to issue process to the US Marshal who shall serve plaintiff's complaint 1 upon the two defendants. 5) The Clerk of Court is further directed to provide Plaintiff and Defendants with a form Notice and Consent to the Jurisdiction of a Magistrate Judge. 6) Defendants are requested to waive service pursuant to 4 (d) of the FRCP [see order for full details]Signed by Magistrate Judge Thomas M. Blewitt on 4/2/14 (ts) (Entered: 04/02/2014) |
| 04/02/2014 | 7 | Summons Issued as to Donald Harrell, Robert G Jones and provided TO U.S. MARSHAL for service on Defendant(s)in the manner prescribed by Rule 4 of the Federal Rules of Civil Procedure. (NOTICE TO ATTORNEYS RECEIVING THE SUMMONS ELECTRONICALLY: You must print the summons and the attachment when you receive it in your e-mail and serve them with the complaint on all defendants in the manner prescribed by Rule 4 of the Federal Rules of Civil Procedure). (Attachments: # 1 Summons Packet) (ts) (Entered: 04/02/2014) |
| 05/19/2014 | 8 | WAIVER OF SERVICE Returned by Theodore Savage. Donald Harrell waiver sent on 5/8/2014, answer due 7/7/2014; Robert G Jones waiver sent on 5/8/2014, answer due 7/7/2014. (ts) (Entered: 05/19/2014) |
| 07/07/2014 | 9 | ANSWER to 1 Complaint by Donald Harrell, Robert G Jones.(Manning, John) (Entered: 07/07/2014) |
| 07/10/2014 | 10 | SCHEDULING ORDER: Telephonic Case Management Conference set for 8/4/2014 10:00 AM before Magistrate Judge Thomas M. Blewitt. Conference to be initiated by the Court. See Order for complete details.Signed by Magistrate Judge Thomas M. Blewitt on 7/10/14. (ms) (Entered: 07/10/2014) |
| 07/25/2014 | 11 | Letter from Assistant Counsel John Manning *regarding status of scheduling order.* (Manning, John) (Entered: 07/25/2014) |
| 08/04/2014 | 13 | SCHEDULING ORDER: Settlement Conference set for 8/14/2014 10:00 AM in Scranton before Magistrate Judge Thomas M. Blewitt. Plaintiff shall participate in the conference telephonically. Counsel for Defendant shall participate in person. Signed by Magistrate Judge Thomas M. Blewitt on 8/4/14. (ms)(Copy of Order FAXED to Records Office at Lackawanna County Prison from Chambers) (Entered: 08/04/2014) |

| 08/19/2014 | 15 | ORDER DISMISSING CASE without costs and without prejudice to the right of either party, upon good cause shown within sixty (60) days, to reinstate the action if settlement is not consummated.Signed by Honorable Malachy E Mannion on 8/19/14. (bs) (Entered: 08/19/2014) |
|---|---|---|
| 08/20/2014 | 16 | First MOTION to Dismiss *Pursuant to the fugitive disentitlement doctrine* by Donald Harrell, Robert G Jones.(Manning, John) (Entered: 08/20/2014) |
| 08/21/2014 | 17 | AMENDED ORDER this action be dismissed with prejudice to the right of either party upon good cause shown, to apply for reinstatement of the action within sixty (60) days of the date of this order if settlement has not been consummated. 15 Order Dismissing Case (60 Day Settlement Order) WITH PREJUDICE.Signed by Honorable Malachy E Mannion on 8/21/14. (bs) (Entered: 08/21/2014) |
| 01/13/2015 | 18 | ORDER finding as moot 16 Motion to Dismiss. See Order for complete details. Signed by Magistrate Judge Martin C. Carlson on 1/13/15 (ms) (Main Document 18 replaced on 1/13/2015) (ms). (Entered: 01/13/2015) |
| 11/07/2019 | 19 | REQUEST for Copy of Civil Complaint (sent to Theordore Savage on 11/7/19) by Theodore Savage. (ga) (Entered: 11/07/2019) |
| 06/02/2020 | 20 | Request for copy of the docket by Theodore Savage. (bg) (Entered: 06/02/2020) |
| 06/02/2020 | | DOCKET ANNOTATION: Copy of the docket mailed to Theodore Savage on 6/2/2020. (bg) (Entered: 06/02/2020) |

" EXHIBIT - L "

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

### Civil Action-In Mandamus

Stacy R. Savage
212 Hope Street
Hazle Township, PA 18201
(570) 599-4350
**Petitioner**

vs.

Jennifer R. Storm, Victim Advocate
Commonwealth of Pennsylvania
Office of Victim Advocate
1101 S. Front Street, Suite 5200
Harrisburg, PA 17104
**Respondent**

*and*

Pennsylvania Board of Probation & Parole
1101 S. Front Street, Suite 5100
Harrisburg, PA 17104
**Respondent**

:    CIVIL ACTION - LAW

:    Misc. Docket No.  467 MD 2019

:    (PBPP File No. 3131-T;
:    OVA-428 Registration No. 9934226)

:    In - Mandamus

## PETITION FOR WRIT OF MANDAMUS

TO THE HONORABLE JUDGES, THE JUDGES OF SAID COURT:

The petition of STACY R. SAVAGE, Petitioner Pro-Se, respectfully represents as follows:

### Jurisdiction

1. This mandamus action is being filed to this Courts original jurisdiction to compel the Respondents to allow Petitioner to give "victim impact testimony" to the Commonwealth of Pennsylvania, Board of Probation and Parole as authorized by the Victim Bill of rights, and provisions of 61 P.S. Section 6140 et seq., and this Court has jurisdiction pursuant to 42 Pa. C.S.A. Section 761, and Artilcle V, Section 9 of the Pennsylvania Constitution.

### Parties

2. Petitioner, STACY R. SAVAGE, is an adult individual, and victim of alleged domestic violence in the Protection From Abuse Act case entitled **Commonwealth of Pennsylvania vs. Theodore Savage,**

1

Criminal No. 8131 of 2016, Court of Common Pleas of Luzerne County, Pennsylvania - Criminal Division, in which her husband, Theodore Savage violated a PFA, and her principle place of residence is located at 212 Hope Street, Hazle Township, Pennsylvania 18201.

3. Respondent, JENNIFER R. STORM, is the Victim Advocate of the Commonwealth of Pennsylvania, (hereafter referred to as the "Victim Advocate")with her principle place of business located at 1101 S. Front Street, Suite 5200,Harrisburg, PA 17104.

4. Respondent, PENNSYLVANIA BOARD OF PROBATION AND PAROLE, is a Board of the Commonwealth of Pennsylvania, (hereafter referred to as "PBPP") with paroling authority over prisoners sentenced to a maximum of (2) or more years in prison, its principle place of business is located at 1101 S. Front Street, Suite 5100, Harrisburg, PA 17104.

**FACTUAL BACKGROUND AND STATEMENT OF CLAIMS**

5. On September 29, 2016, Petitioner's husband, Theodore Savage (PBPP No. 3131-T) was tried and convicted of Indirect Criminal Contempt, for violating a Protection From Abuse Order for his returning to Petitioner's (their martial home) home located at 212 Hope Street, Hazle Township, Pennsylvania 18201, in violation of a Protection From Abuse Order entered by the Court of Common Pleas of Luzerne County at No. 8131 of 2016, which prohibited Petitioner's husband from returning to their martial home. (Hereafter referred to as "PFA violation").

6. At the time of this PFA violation, Petitioner's husband was on state parole under the jurisdiction of Respondent, PBPP.

7. As Petitioner's husband was on state parole at the time of the aforesaid PFA violation, he was returned to state custody as a "convicted parole violator" *based solely upon the conviction set forth above relative to the PFA violation*. See: "**Exhibit - A**" attached hereto, NOTICE OF CHARGES AND HEARING, PBPP-257N.

8. As a "victim", Petitioner registered as a "victim" with Respondent, Victim Advocate, and requested to be notified of the decision making and release status of Petitioner's husband Theodore Savage. As a Victim, Petitioner was assigned "OVA - 428 Registration #: 9934226," and subsequently has been repeatedly informed of all Board (PBPP) decisions relative to her husband Theodore.

9. Petitioner initially contact Respondent, Victim Advocate, and requested to be permitted to give in person victim impact testimony/input to Respondent PBPP, at which time she was advised she was not a victim, and therefore could not give victim impact testimony to the PBPP. Petitioner's husband is scheduled to be reviewed for parole release on the *September - 2019 Docket of the PBPP.*

10. Petitioner subsequently, submitted a formal "Petition For Administrative Relief," to the Office of Victim Advocate, challenging its decision to deny Petitioner an opportunity to give in person victim impact testimony to the PBPP.

11. On May 26, 2019, pursuant to 61 P.S. Section 6140(e), Petitioner sent written Notice to PBPP Chairman, requesting to be permitted to give "victim impact testimony" to the PBPP before it

2

decided to grant or deny parole release to Petitioner's husband Theodore. See: "**EXHIBIT - B**," attached hereto, letter to Respondent, PBPP dated May 26, 2019.

12. Pursuant to Petitioner's letter to the PBPP Chairman, Respondent, Victim Advocate scheduled Petitioner to give in person "victim impact testimony" to the PBPP pursuant to 61 P.S. Section 6140 et seq. for July 17, 2019. See: "**EXHIBIT - C & D**", attached hereto, letters from Respondent, Victim Advocate.

13. That by letter dated July 12, 2019, and in person telephone calls from Respondent Victim Advocate's Office, Petitioner was advised that she was not a "victim" as defined by law, and therefore would not be permitted to give in person "victim impact testimony' under the provisions of 61 P.S. Section 6140 et seq., as previously scheduled. See: "**EXHIBIT -E**", attached hereto. It is this decision that is subject to challenge in this instant mandamus action.

14. Petitioner avers that she is in fact a victim as defined by law, with the absolute right to give "victim impact testimony," to the Respondent PBPP before it decides Petitioner's spouses case and whether to grant or deny him parole release, and Petitioner submits the following in support of this proposition:

(a) Petitioner is a "victim," as defined by law, as she was a victim of alleged domestic violence at the hands of her husband, that resulted in a conviction in a Court of Record for Petitioner's Spouse violating a Protection From Abuse Act Order, that was the direct result of his return to state custody as a "Convicted parole Violator."

(b) Petitioner's spouses return to society will directly affect this Petitioner.

(c) Petitioner has in fact been given a "Victim Registration Number," (OVA-428 Registration No. 9934226), and in fact therefore, acknowlegded by Respondent's as a "victim," since her huband was convicted of violating the PFA Order, affording her all rights of a crime victim thereof for the past (3) years.

(d) If Petitioner was not a victim of the PFA violation of her husband set forth above, her husband would not have been returned to state prison as a parole violator, but rather would be at liberty on parole in the community, as he had no technical parole violations, and was recommitted solely based off the PFA violation for which Petitioner is the victim as defined by law.

(e) Respondent, PBPP has repeatedly referenced Petitioner as a "victim," at (3) previous parole hearings, and requires Petitioner's spouse Theodore Savage to submit an "OFFENDER VERSION," of the aforesaid PFA violation, each time he is reviewed for parole/reparole release, further evidencing that Petitioner is a "victim" as defined by law.

15. Based on all the foregoing, Petitioner is a "victim" as defined by law with the absolute right to give "victim impact testimony' to the Respondent PBPP, and its refusal to let her do so violates the mandates of 61 P.S. Section 6140 et seq, and the Crime Victims Bill of Rights.

16. Petitioner has a clear legal right to give in person victim impact testimony to the Respondent, PBPP relative to her husband's September - 2019 parole review under 61 P.S. Section 6140

3

et seq., and the Respondent's have a clear legal duty under the law to afford Petitioner such right, therefore mandamus is the proper remedy in this matter. See: **Marshall vs. PBPP**, 162 Pa. Commwlth. 256, 638 A.2d 451 (1994); and **Mickens-Thomas vs. PBPP**, 699 A.2d 792 (Pa. Cmwlth. 1997).

17. Petitioner has exhausted all available administrative remedies.

18. Petitioner avers if it is more appropriate that she sue under 42 U.S.C. Section 1983 in the Federal District Court challenging the constitutionality of 61 P.S. Section 6140, and violations of her rights to due process and equal prtection under the Fourteenth Amendment of the United States Constitution, she will proceed accordingly to protect her interest, and right to provide in person "victim impact testimony" before the Respondent, PBPP.

19. Petitioner will hereby stipulate to a voluntary dismissal of this action forthwith, should Respondent's agree to permit her to give "in person victim impact testimony," as authorized by 61 P.S. Section 6140 forthwith, and before it renders a decision in her husband's case, affording Petitioner, her right to be heard.

20. It is in the interest of justice and fundamental fairness to this victim, that this Court grant the relief sought in this instant petition.

**WHEREFORE**, Petitioner, STACY R. SAVAGE, request this Court issue a writ of mandamus, or other Order requiring Respondent's to permit her to give "in person victim impact testimony" as authorized by 61 P.S. Section 6140, or grant other relief deemed appropriate under the circumstances.

DATE:___ *8-6-19* _____

Respectfully submitted,

Stacy R. Savage
212 Hope Street
Hazle Township, PA 18201
(570) 599-4350

PETITIONER PRO-SE

CC: Mr. Matthew Comerford, Esquire(w/enclosures)
Honorable Timothy J. Savage, U.S. District Court Judge(w/enclosures)
Ms. Tami Burke, Luzerne Co. Victim Resource Center(w/enclosure)

4

# VERIFICATION

I, the undersigned, do hereby verify that the facts in the foregoing petition are true and correct to the best of my personal knowledge, information and belief and that any false statement therein is being made subject to the penalties provided by 18 PA C.S.A. Section 4904, relating to Unsworn Falsification To Authorities.

_Stacy R. Savage_    DATE: _8-6-19_

Stacy R. Savage
212 Hope Street
Hazle Township, PA 18201
(570) 599-4350

PETITIONER PRO-SE

" EXHIBIT - M "



# THE
# CHRISTIAN
# WAY IN
# MARRIAGE

COURSE 5

ADVANCED SERIES

EXHIBIT-B

# LESSON 2

# GOD'S PLAN FOR MARRIAGE

What actions join a man and a woman together in a marriage relationship? Does a ceremony in a church make a marriage Christian? Was divorce in God's original plan?

*Read:* Genesis 2:18-25, Matthew 19:3-12, Mark 10:2-12, Ephesians 5:21-31.

## JESUS CONFIRMS GOD'S PLAN

Jesus clearly teaches us in the Matthew and Mark passages that the deepest meaning of marriage is the husband and wife becoming "one body." To become one flesh means that two persons become completely one with body, soul, and spirit even though they remain two different persons. This is the mystery of marriage. It is not two halves making one whole, but two persons forming an entirely new whole.

Jesus says that this oneness is a creation of God. Marriage is not just a human happening. It is more than a ceremony in a church or the traditional exchange of gifts and service. God unites a man and a woman, and what He joins together, man must not separate. The sexual bond creates a unity of body, mind, and spirit. This unity is intended only for those who are living in a marriage relationship.

## LEAVING AND CLEAVING

The oneness of marriage is possible only if the two partners leave their parental homes and cleave to each other. Leaving and cleaving go together. You cannot really leave unless you decide to cleave. There can be no real cleaving without leaving. Leaving is hard, but necessary. Otherwise, the new family unit will not be strong. In-laws and relatives will interfere. If circumstances demand that the couple continue to live at the home of parents, they still must "leave" in their minds and hearts. A husband or wife must come first.

Cleaving is a continuous process of being joined or "glued" together. It means taking time to share thoughts, feelings, ideas. It demands faithfulness, love, and commitment to the marriage partner. It means turning to the other person first in joy and in sorrow. To cleave in this deep sense is only possible between two persons committed to each other.

## THE THREE SIDES OF MARRIAGE

Since the verse about leaving, cleaving, and becoming one flesh is repeated four times in the Bible, we know it is important. The first step must be leaving father and mother for one's partner. The two are then to cling to each other. The final step is sexual union, not the reverse order.



2. CLEAVING

13

This drawing represents the shelter God's plan provides for a good marriage and a strong family life. An ideal marriage is built on the plan God provided.

When one of the sides is weak or lacking, the marriage is open to all kinds of troubles and problems, including adultery and divorce. Such a marriage is neither safe nor strong. It is *not* a good shelter for children. It is like a stool with three legs. When one leg is missing, the stool falls down. Likewise with marriage. Divorce and polygamy are contrary to God's ideal for a lifetime marriage of one husband and one wife. A Christian will work toward achieving God's ideal. If at some point a person has violated God's plan, godly wisdom should be used from here forward. Careful Bible study and prayer are necessary to rebuild relationships and make future right choices.

No matter what your problems and disappointments are, recognize that a bond exists between you and your partner that must not be broken. Jesus taught that the marriage does not go away just because you get a legal divorce. A piece of paper cannot separate what God has created. The oneness between man and woman is deep and worthy of care and attention.

## MOVE TOWARD THE GOAL

So what can we do if one or more parts of our marriage are missing or weak? God's plan for marriage is a goal toward which we move. His plan is just as good for those who are already married as for those who are not yet married. His plan offers help and hope to all of us. Building a marriage is like building a house—if we have only one wall, we need to get busy and build the other walls. The Christian way in marriage calls for commitment and work.

John and Mary have left their families; they are one in marriage. John's job keeps him away from home long hours. Mary is busy caring for three young children. They have little opportunity to enjoy life together. Their marriage will become more rewarding if they work at cleaving—spending more time sharing and growing together.

José and María are not happy. María feels that her husband does not respect her. He expects her to serve him, and if his food or clothes are not ready on time, he abuses her. José thinks María is jealous of his position and says that she does not love him. If she did, she would gladly spend all her time taking care of him. After our study of Genesis 1-3, what advice would you give María and José?

## SUMMARY

Christian partners are not perfect. But they try to build the kind of relationship God intended. The first step toward a Christian marriage is a desire to follow God's plan. Christians are persons who know they need God's help. Instead of turning to divorce when things do not go well, they try to repair and strengthen their relationship to each other. When they leave and cleave, they find themselves becoming one. Couples who follow God's plan for marriage will discover new ways to grow in oneness and love as the years go by.

14

*Prayer:* Thank You, God, for giving us a plan to follow.
Forgive us where we have gone astray and missed the way.
Help us to remember that You left Your home
and gave Yourself to us in love
that we might become one with You and one with each other.
Amen.

15

Case 3:20-cv-02354-DFB    Document 1    Filed 12/15/20    Page 90 of 92

## LESSON 8

# FAITHFULNESS AND FORGIVENESS

What does it mean to be faithful in a marriage? Is marriage forever? Can a marriage last if one partner is unfaithful? How does one find the strength to forgive? Is it necessary to forgive if the other person does not ask for forgiveness or admit doing wrong? Do faithfulness and forgiveness go together?

*Read:* John 8:1-11, Matthew 5:27-31, Hosea 2:16-23, Luke 15:11-32, Matthew 18:21-35, Ephesians 4:25-32.

### MARRIAGE IS A COMMITMENT

Marriage is for life. But sometimes people say, "Let's get married and see how it works. If we don't like it, we can always get a divorce." No sincere Christian enters marriage in that spirit. In the New Testament, marriage is for life; it is not an experiment. Marriage is a commitment, a covenant, a relationship. Such a marriage is possible only when the partners are faithful and forgiving.

The Old Testament is a story of God's faithfulness to His people. Israel sinned and forsook the Lord time after time. She played the harlot and went after other gods. Yet God said, "How can I give you up! How can I hand you over! . . . My compassion grows warm and tender. . . . I will heal their faithlessness; I will love them freely" (Hosea 11:8, 14:4). God did not cut Himself off from Israel, or from us. In a similar way, when one partner is unfaithful, the other keeps the door of forgiveness and reconciliation open as long as possible.

The Prophet Hosea loved his wife, but he was about to divorce her because she was unfaithful to him. Then he realized that God continued to love His people in spite of their unfaithfulness. Since God's love is forever, Hosea decided that his love would be forever, too. Though Gomer rejected and betrayed him, he would remain true to her. Although deeply hurt, Hosea decided that Gomer's unfaithfulness would not weaken his love. His love was based on an act of his will rather than on his feelings. Therefore, he was able to forgive. His faithfulness and forgiveness kept their seemingly impossible marriage together.

### LEARNING FAITHFULNESS AND FORGIVENESS

Our relationship to God and our relationship to man are related. An experience of God's love makes it possible for us to love others. His love is the basis of both faithfulness and forgiveness. We are able to be faithful when someone else supports and cares for us with love and loyalty. Because God is faithful to us, we can be faithful to our partner. We learn to forgive by observing forgiveness between other people,

37

Case 3:20-cv-02354-DFB   Document 1   Filed 12/15/20   Page 91 of 92

by being forgiven ourselves, and by forgiving others. Because we have known God's forgiveness, we can forgive.

The New Testament shows us how faithfulness and forgiveness work in human relationships. The main point of Luke 15 is *not* that the young man finally does the right thing. What really matters is that a loving father could remain faithful to a foolish son. Some people considered the son worthless. His father greeted him as someone priceless. Even though the son left the family and wasted his inheritance, he was still the father's son. Marriage is like this too - no matter what you do or where you go, you are still a part of each other; you are still one.

## THE REAL MEANING OF FAITHFULNESS

Jesus taught that faithfulness means more than avoiding adultery. Faithfulness, like unfaithfulness, begins in our thoughts. Usually a period of disloyalty in one's thoughts prepares the way for an act of adultery. Both husband and wife are to be faithful to each other. The best way to remain faithful is to try to be completely loyal in every area of your relationship. Those who live to trust and please each other in the little things, generally find that the big issues take care of themselves.

We decide to be faithful or unfaithful. When we decide to be faithful, our choice becomes a positive force in our lives. Our decision guards our thoughts and desires. We are then better able to find ways to show love and support to the other. Faithfulness is so much more than just sexual fidelity. To be faithful is to stand beside the other, helping him/her to become all that God intended for him/her to be. This kind of commitment makes a marriage last. When real devotion exists between a husband and wife, a third person will not be able to break the bond.

## THE TRUE MEANING OF FORGIVENESS

When a marriage is broken by unfaithfulness, feelings of anger, disappointment, and mistrust will arise. The Ephesians 4 passage gives guidelines for handling anger in a helpful way. (1) Anger should be directed at the wrong and evil, not at the other person. (2) It must be controlled. (3) Hatred, malice, or resentment are to be avoided. This is easily said, but not so easily lived. The Apostle Paul tells us to get rid of bitterness, passion, hatred and anger, asking God to replace them with kind, tenderhearted forgiveness.

Kindness and forgiveness help to heal and restore a broken relationship. These attitudes and actions soften unkind words. Forgiveness enables us to accept our partner's faults, as well as our own. Our attitude of forgiveness frees us to speak the truth in love to our partner. We can love our partner in spite of the faults and weaknesses we discover in him/her. Forgiveness permits us to help our partner "onward and upward." Forgiveness gives her/him the freedom to change and to begin responding in new ways.

The story of the woman taken in adultery is a beautiful illustration of this truth. Jesus does not stone us when we do wrong. Instead, He helps us turn around and change our ways. The woman was not excused for what she had done. Jesus called her adultery sin. But He accepted the woman and told her to go and sin no more. His willingness to forgive gave her the freedom to change.

38

In each of the stories in this lesson, we met someone who needed to be forgiven and some people who could not forgive. What makes forgiveness so difficult? The older brother in Luke 15 was so filled with ideas of his own goodness that he could not forgive his brother's faults. Likewise, we cannot forgive before we recognize and confess our own faults and sins. But after we experience God's love and forgiveness, we are able to forgive, accept, and love others.

But what about the servant? He was forgiven much; yet he had no pity on his fellow servant. Forgiveness is an act of the will. We have to want to forgive. The father in Luke 15 did not wait to forgive his son until he had proven his change of life. The father immediately recognized the son's desire to be restored to fellowship and welcomed him with open arms.

Forgiveness is necessary whether or not the other person asks to be forgiven, whether or not he changes. True forgiveness is more than mere words. It is an attitude, a way of life. We need to forgive from the heart and forget the wrongs. Jesus is our example. When He hung on the cross, innocent of any wrong, He said, "Father, forgive them, for they don't know what they are doing." Through the power of Jesus, we too can forgive openly, freely, and repeatedly.

*Prayer:* Our Father, it is so difficult to forgive another's mistake
and so easy to point the finger,
to remind the other of failings and faults.
Help us to forgive as Christ forgives,
and to forget another's failures as You forget our failures
so that we may help one another to grow in Your likeness.
Amen.

39



Smart Communications/PADOC

SCI- Mahanoy

Name Leo Gardner    Number NN-6035

PO Box 33028

St Petersburg FL 33733

INMATE MAIL
PA DEPT OF CORRECTIONS

U.S. POSTAGE >> PITNEY BOWES

ZIP 17932 $ 009.20⁰
02 4W
0000364159 DEC 11. 2020

RECEIVED
SCRANTON

DEC 15 2020

PER Amo
DEPUTY CLERK

TO:  Office of the Clerk
U.S. District Court-Middle District of PA
U.S. Courthouse
235 N. Washington Avenue
P.O. Box 1148
Scranton, PA 18501-1148

UNITED STATES
POSTAL SERVICE ®

USPS TRACKING #

9114 9014 9645 0496 2568 52